**OMNI INTERNATIONAL HOTELS, INC., d/b/a Omni International Hotel/Miami, Petitioner Cross-Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent Cross-Petitioner.**

**No. 79-1156.**

United States Court of Appeals, Fifth Circuit.

Nov. 14, 1979.

Stokes, Lazarus & Stokes, Arch Y. Stokes, Cynthia Fitzgerald, Atlanta, Ga., for petitioner cross-respondent.

Elliott Moore, Deputy Associate Gen. Counsel, Marjorie S. Gofreed, Anton Hajjar, Attys., N. L. R. B, Washington, D. C., for respondent cross-petitioner.

Before GEWIN, AINSWORTH and REAVLEY, Circuit Judges.

GEWIN, Circuit Judge:

OMNI International Hotels (OMNI) of Miami seeks review of an order of the National Labor Relations Board (NLRB) which found OMNI in violation of §§ 8(a)(1) and 8(a)(3) of the National Labor Relations Act, as amended, 29 U.S.C. §§ 158(a)(1) and (a)(3) by its failure to hire five individuals purportedly because of their previous union activity while working for another employer. After a hearing before Administrative Law Judge (ALJ) Thomas Ricci in Coral

Gables, Florida, OMNI was ordered to hire the five individuals who alleged discrimination and to cease and desist from discouraging union membership. After considering OMNI's exceptions to the ALJ's decision and order the Board affirmed with minor modifications on December 29, 1978. OMNI then filed this petition. The Board cross-applied for enforcement of the order. We find no substantial evidence considering the record as a whole to support the ruling of the ALJ and the Board and deny enforcement.

This case arises out of OMNI's failure to hire five named individuals during the pre-opening period of its luxury hotel in Miami in early 1977. These individuals, Maria Cruz, Syda Campolegre, Eloisa Perera, Delia Delgado and Daniela Vega, had all been employees of the Doral Beach Hotel on Miami Beach. During the Christmas season of 1976 the Hotel, Motel, Restaurant and Hi-Rise Employees and Bartenders Union, Local 355, AFL–CIO (Union) called a strike against various Miami Beach hotels, including the Doral. All five of these individuals participated in the strike and all five were fired from employment at the Doral shortly after the strike ended. The discharge of these employees was found to be an unfair labor practice by an Administrative Law Judge on September 29, 1978. Southern Florida Hotel and Motel Ass'n, et al., Case No. 12–CA–7662, et al., JD–680–78, pages 56–57, 65–70, Appendix D at iii-iv. At the time of the discharge Olga Santamaria was assistant personnel director and Marianne Vietbauer was director of housekeepers at the Doral. Both Santamaria and Vietbauer were hired for similar positions at the OMNI in early 1977.

The OMNI ran advertisements in the "want ads" section of area newspapers in early 1977 which listed available positions and qualifications required. English-speaking ability was listed as a requirement for the guestroom attendant (maid) positions. The OMNI received approximately 8,000 applications for the 400 positions to be filled on its opening staff. 1300 interviews were conducted to select these employees. Approximately 1000 of the applications received were for the 37 positions available for maids. Twenty of the original thirty-seven hired as maids were from unionized properties.

Four of the five alleged discriminatees were among the thousands of applicants seeking jobs at the OMNI. One of them, Eloisa Perera, went to the OMNI to inquire about a position as maid but never applied. Maria Cruz, the only one of the four applicants who spoke English, applied for a position as waitress. Ms. Campolegre and Ms. Delgado applied for jobs as maids and Ms. Vega applied for a job in the laundry. None of the applicants were hired and they received a form letter, apparently sent to all applicants, stating that while their credentials were impressive, all positions were filled and that their applications would be kept in OMNI's active file.

Three of the complainants alleged that they encountered hostile or negative statements from the employment office at the OMNI regarding their participation in the strike at the Doral Beach Hotel. Ms. Perera charged that the negative reaction she received was the reason for her failure to apply for a position.

Ms. Santamaria, the assistant personnel director at the OMNI, denied all such allegations. Santamaria testified that Ms. Campolegre and Ms. Delgado asked her if it was true that the OMNI was not hiring anyone who had participated in the strike and she assured both of them that it was not true. Santamaria further testified that Campolegre, Delgado and Vega were not hired because of their inability to speak English and because of poor work or attendance records. She testified that Maria Cruz was not hired as a waitress because of several incidents with customers at the Doral Beach Hotel indicating an unsatisfactory work record.

The Administrative Law Judge credited the applicants' testimony against OMNI's rebuttal and suggested that any reasons given for not hiring these applicants, other than lack of English-speaking ability, were admissions against interest. He also dis-

credited OMNI's testimony because of the alleged inconsistencies between the poor work records cited as reasons for not hiring these applicants and the laudatory language in the form letters sent to the applicants when they were not hired.

Sections 10(e) and (f) of the National Labor Relations Act, 29 U.S.C. §§ 160(e) and (f) provide that "The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." This provision puts rather strict limits on the review to which decisions of the National Labor Relations Board may be subjected. It has been clear, however, since the seminal case of *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951) that the Act was not intended to make the Courts of Appeals rubberstamps for the Board's determinations.

Reviewing courts must be influenced by a feeling that they are not to abdicate the conventional judicial function. Congress has imposed on them responsibility for assuring that the Board keeps within reasonable grounds. That responsibility is not less real because it is limited to enforcing the requirement that evidence appear substantial when viewed, on the record as a whole, by courts invested with the authority and enjoying the prestige of the Courts of Appeals.

The Board's findings are entitled to respect; but they must nonetheless be set aside when the record before a Court of Appeals clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence or both.

*Id.* at 490, 71 S.Ct. at 466, 95 L.Ed. at 468–69. *See NLRB v. Brown,* 380 U.S. 278, 290–91, 85 S.Ct. 980, 988, 13 L.Ed.2d 839, 848 (1965) (the exercise of "limited judicial review" does "not mean that the balance struck by the Board is immune from judicial examination and reversal in proper cases.").

Thus, while it is clear that we are to grant enforcement and sustain the Board's findings if they are supported by substantial evidence, "we should deny enforcement if, after a full review of the record, we are unable *conscientiously* to conclude that the evidence supporting the Board's determinations is substantial." *Mueller Brass Co. v. NLRB,* 544 F.2d 815, 817 (5th Cir. 1977). The fact that we are limited in our review of the Board's choice between two equally plausible views, *NLRB v. United Insurance Co.,* 390 U.S. 254, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968), does not mean that we must rubberstamp that determination when it appears clearly on the record when viewed as a whole that the view credited was far less plausible than testimony which was discredited by the ALJ. *See Mueller Brass,* 544 F.2d at 817.

The evidence in the record now before the court presents just such a case. As indicated earlier there is undisputed testimony that OMNI International Hotels received over 8000 applications for the 400 positions on its staff. They conducted 1300 interviews and selected many union members for employment at the new hotel. The Board presents only the disputed allegations of three of the five alleged discriminatees that they received hostile, anti-union comments from the employment office and the claimed inconsistencies between the testimony of poor work and attendance records and the laudatory statements included in over 7500 form rejection letters. Additionally, general counsel for the Board admitted on the record that he did not contend that OMNI was "particularly anti-union."

The fact that five complainants were among thousands of applicants who were not hired, while not conclusively indicating no discrimination, presents weighty evidence that these individuals were not singled out for their union activity. *See NLRB v. Appleton Electric Company,* 296 F.2d 202, 207 (7th Cir. 1961). The evidence that many union members and, in fact, some who had participated in the strike of Miami Beach hotels were hired by OMNI is

also a strong indication that OMNI was not antiunion, Winn-Dixie Texas, Inc., 1978 N.L.R.B. Decisions (CCH) ¶ 19,248, even without General Counsel's statement on the record admitting that fact. Absent antiunion animus OMNI's hiring decisions are well within its discretion.

In controversies involving employee discharges or suspensions, the motive of the employer is the controlling factor. *NLRB v. Brown*, 380 U.S. at 287, 85 S.Ct. 980. Absent a showing of antiunion motivation, an employer may discharge an employee without running afoul of the fair labor laws for a good reason, a bad reason or no reason at all.

*Mueller Brass Co. v. NLRB*, 544 F.2d at 819 (quoting *NLRB v. O. A. Fuller Super Markets, Inc.*, 374 F.2d 197, 200 (5th Cir. 1967)). Certainly an employer's right to make the initial hiring decision regarding an applicant is at least as plenary as his right to discharge an employee. Absent antiunion sentiment the employer has every right to hire at will. *NLRB v. Florida Steel Corp.*, 586 F.2d 436, 444 (5th Cir. 1978); *see NLRB v. South Rambler Co.*, 324 F.2d 447, 449 (8th Cir. 1963).

█ The stated reasons by the ALJ for discrediting the testimony of management witnesses are even more implausible than his determination of anti-union animus. He regarded testimony concerning poor attitude or bad work or attendance records of the applicants as admissions against interest because inability to speak English could have been sufficient to screen out and disregard their applications. This court can take judicial notice of the fact that any employer may have several reasons not to hire an applicant. To regard all reasons beyond the first one stated as admissions against interest is inherently ludicrous.[1]

█ It should be noted also that the testimony of management regarding the poor work records of the applicants was never effectively contradicted. While this fact alone may not serve as grounds for denying enforcement,[2] such treatment "does not reflect a complete and fair consideration of all the evidence." *NLRB v. Audio Industries, Inc.*, 313 F.2d 858, 864 (7th Cir. 1963). Certainly the ALJ must consider all the

1. The Board places heavy reliance on this court's decision in *NLRB v. Ferguson*, 257 F.2d 88 (5th Cir. 1958), a discharge case wherein the court noted that if the testimony of NLRB witnesses was credited it amounted to an "outright confession of unlawful discrimination" by management. *Id.* at 92. Like this case the evidence concerning whether discriminatory statements were made by management was in dispute. Unlike this case, however, there was ample virtually undisputed evidence of antiunion sentiment. Counsel for management in *Ferguson* even recognized that there may have been substantial evidence to justify the Board's findings. *Id.* at 89. We do not quibble with the limits on our function in fact finding outlined by the court in *Ferguson*. We agree that our function "is merely to determine whether there was substantial evidence on the record considered as a whole." *Id.* at 90. Unlike *Ferguson*, however, the evidence here is not substantial enough to support the ALJ's findings. Where only five persons out of eight thousand applicants alleged discrimination, only three of those five alleged antiunion statements were made by management and it is clear that many union members were hired, the fully disputed testimony of the Board's witnesses is inherently incredible.

2. The United States Supreme Court in *NLRB v. Walton Manufacturing Company*, 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829, *reversing* 286 F.2d 16 (5th Cir. 1961), rejected a special rule announced in the Fifth Circuit for "reinstatement with back pay" cases. In *NLRB v. Tex-O-Kan Flour Mills Co.*, 122 F.2d 433 (5th Cir. 1941) the Fifth Circuit stated that the employer's sworn denial of anti-union animus in discharging employees could not be disregarded merely on suspicion that he may be lying unless there is substantial impeachment or contradiction of him. The Supreme Court found this special rule to be an incorrect reading of *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). "There is no place in the statutory scheme for one test of the substantiality of the evidence in reinstatement cases and another test in other cases." *Walton*, 369 U.S. at 407, 82 S.Ct. at 855, 7 L.Ed.2d at 832.

The decision announced by this court today, however, is based on an inquiry into whether substantial evidence exists on the record as a whole to support the findings of the ALJ. There is nothing in *Universal Camera* or *Walton* to indicate that a Court of Appeals cannot review the findings of the ALJ when there is clearly insufficient evidence on the record as a whole to support his decision.

evidence and give each party a full and impartial hearing. Given the strength of OMNI's case it is clear that the ALJ did not fairly consider rebuttals to the alleged discrimination, some of which were uncontroverted. The evidence of unlawful discrimination is insubstantial.

ENFORCEMENT DENIED.