**UNITED STATES POSTAL SERVICE, Petitioner, Cross-Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent, Cross-Petitioner.**

**No. 80–2129.**

United States Court of Appeals, Fifth Circuit. Unit A

July 17, 1981.

---

1. The hearing lasted only 51 minutes.

John G. Hollingsworth, Jr., Law Dept., Office of Labor Law, U. S. Postal Service, Memphis, Tenn., for petitioner, cross-respondent.

Elliott Moore, Deputy Associate Gen. Counsel, NLRB, Washington, D. C., Michael Okun, Carrboro, N. C., for respondent, cross-petitioner.

Before RUBIN, RANDALL and TATE, Circuit Judges.

PER CURIAM:

This case is before the court on petition of the United States Postal Service (the Postal Service) for review of the final order of the National Labor Relations Board (the Board) in *United States Postal Service,* 251 N.L.R.B. No. 33 (1980), and on the cross-application of the Board for enforcement of its order. In its decision in this case the Board found that the Postal Service had violated section 8(a)(1) and (3) of the National Labor Relations Act (the Act), 29 U.S.C. § 158(a)(1) and (3) (1976), by issuing to each of two employees a warning letter that was based in part on the refusal of the employee immediately to return to work at the conclusion of a grievance meeting despite clear directions from his supervisor to do so. The Postal Service argues that the employees' actions were insubordinate and that its warnings were thus proper, but the Board argues that the employees' actions were protected activities under section 7 of the Act, 29 U.S.C. § 157. We find that the Board acted within its authority in determining that the employees' behavior was protected; we therefore deny the petition for review and grant the cross-application for enforcement.

I.

This dispute began with an informal grievance meeting requested by R. P. O'Harrow and Jack Woods, who at the time of these events served as president and vice-president, respectively, of the American Postal Workers Union local at the San Angelo, Texas post office; the meeting took place with John Love and Robert Nichols, both of whom are supervisors at the San Angelo post office. After a heated exchange on a matter not relevant to this appeal, Love ended the meeting and asked O'Harrow and Woods to return to work. The two employees did not immediately return to work, but instead followed Love and Nichols out onto the workroom floor and continued to argue loudly. Love for a second time directed O'Harrow and Woods to return to work but O'Harrow continued arguing and both employees remained on the spot. As Love began to issue a third order to the two employees to return to work, O'Harrow suddenly stopped arguing and both he and Woods returned to their jobs.

Although O'Harrow and Woods did refuse immediately to return to work at the conclusion of the grievance meeting, their refusal was brief and caused no disruption

among other employees. As the Board characterized their behavior:

> [T]his is not a case where employees adamantly refused to leave the meeting room when asked to pursue their grievance later and to return to work. Nor is this a case in which the employees tried to impede others who sought to leave. Here, the two employees followed the two supervisors back to the workroom floor. At least to this point their only "insubordination," if it can be called such, was in continuing to talk about their grievance as they walked along. When the employees and the supervisors reached the timeclock, Supervisor Love turned and said, "I am giving you a direct order. I want you to go back to work now." After what was by all accounts a momentary hesitation, and apparently before Love had to repeat the order, the two employees complied with it.

251 N.L.R.B. No. 33 at 2–3.

On the following day letters of warning for insubordination were given to both O'Harrow and Woods. Each letter was based in part on the refusal of the employee to return to work at the conclusion of the grievance meeting, and each warned that similar conduct in the future would result in more severe sanctions such as suspension or discharge.

## II.

■ The Board was called upon in this case to reconcile two equally important but conflicting rights. On the one hand is the employee's right to self-organization, which in this case took the form of two employees' participation in an informal grievance meeting. As we stated in *Crown Central Petroleum Corp. v. NLRB*, 430 F.2d 724, 729 (5th Cir. 1970), "the filing and prosecution of employee grievances is a fundamental, day-to-day part of collective bargaining and is protected by Section 7 [of the Act, 29 U.S.C. § 157]." On the other hand is the employer's right to maintain discipline in its establishment. "An employee may not act with impunity even though he is engaged in protected activity. His rights, derived from

Section 7, must be balanced against the employer's right to maintain order in his business by punishing acts of insubordination." *Id. See Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 797–98, 65 S.Ct. 982, 985, 89 L.Ed. 1372 (1945).

■ This conflict typically arises in cases where an employee has been disciplined for conduct that occurred during the course of the grievance meeting. *See, e. g., NLRB v. Florida Medical Center, Inc.*, 576 F.2d 666, 671–73 (5th Cir. 1978) (employee called administrator "a Mafia director"); *Crown Central Petroleum Corp. v. NLRB, supra* (employee accused a superintendent of lying). The Act has ordinarily been interpreted to protect the employee against discipline for impulsive and perhaps insubordinate behavior that occurs during grievance meetings, for such meetings require a free and frank exchange of views and often arise from highly emotional and personal conflicts. Both the Board and the courts have recognized that some tolerance is necessary if grievance meetings are to succeed at all; as we have noted before, "bruised sensibilities may be the price exacted for industrial peace." *Crown Central Petroleum Corp. v. NLRB, supra*, at 731. *See Bettcher Manufacturing Corp.*, 76 N.L.R.B. 526 (1948). In some cases, however, the employee's conduct during the meeting has been found to be so opprobrious or disruptive that the Act's protection must give way to the employer's right to maintain discipline in its establishment. When the employee's conduct during a grievance meeting is "indefensible under the circumstances," the employer may indeed discipline the employee without violating the Act. *NLRB v. Florida Medical Center, Inc., supra*, at 673.

The Postal Service argues on appeal that O'Harrow's and Woods' behavior was in fact "indefensible" and therefore beyond the protection of the Act. *See* 251 N.L.R.B. No. 33 at 5–9 (Penello, M., dissenting). We disagree, for the Board found that the two employees' refusal to return to work was relatively brief and caused no disruption among other employees. We have exam-

ined the record as a whole and we find it to support the Board's characterization of O'Harrow's and Woods' behavior. Given this characterization, we cannot quarrel with the Board's conclusion that O'Harrow's and Woods' behavior was not so indefensible as to forfeit the protection of the Act. Cases considering employee behavior during grievance meetings underscore the central role that the Board serves in striking the balance between the employee's right to organize and the employer's right to maintain discipline. "Initially, the responsibility to draw the line between these conflicting rights rests with the Board, and its determination, unless illogical or arbitrary, ought not to be disturbed." *Crown Central Petroleum Corp. v. NLRB, supra*, at 730, *quoting NLRB v. Thor Power Tool Co.*, 351 F.2d 584, 587 (7th Cir. 1965). *See Republic Aviation Corp. v. NLRB, supra; Falcon Plastics Division of B–D Laboratories, Inc. v. NLRB*, 397 F.2d 965 (9th Cir. 1968). The Board's conclusion in this case is neither illogical nor arbitrary; indeed, it rests on a reasonable and established policy that in the context of grievance meetings the Act should be lenient with spontaneous employee insubordination that is not disruptive of other employees. *See, e. g., NLRB v. Florida Medical Center, Inc., supra*, at 673. Accordingly, we defer to the Board's judgment that O'Harrow's and Woods' conduct was not "indefensible."

The Postal Service does not challenge the wide discretion of the Board in this area, but does point to the unusual context of this case—that is, to the fact that the grievance meeting had aready ended when the "insubordinate" conduct took place. The Postal Service argues that when Love ended the meeting the Act's protection also ceased, *i. e.*, that O'Harrow's and Woods' brief continuation of the argument and refusal to return to work was liable to discipline just as if the protected grievance meeting had never occurred. The Board rejected this argument. As the administrative law judge explained.

> [The Postal Service] has seemingly bifurcated the conduct of O'Harrow and Woods, finding protected that which occurred prior to Love's announcement [of the conclusion of the meeting] and unprotected that which occurred thereafter. Such an argument, however, would enable an employer, by its own whim, to define the nature of protected activity, and I believe such an argument is repugnant to the policies of the Act.... I believe that the entire conduct of O'Harrow and Woods ... was within the *res gestae* of the grievance meeting.

251 N.L.R.B. No. 33 at 11.

■ We agree with the Board's conclusion that the Act's protection of an employee's conduct during a grievance meeting does not necessarily terminate the instant when the employer ends the discussion. This conclusion is supported by prior decisions of the Board and is eminently reasonable. *See Thor Power Tool Co.*, 148 N.L.R.B. 1379, 1380, 1388, *enforced*, 351 F.2d 584 (7th Cir. 1965); *Bettcher Manufacturing Corp.*, 76 N.L.R.B. 526, 537 (1948). Surely the principals involved in a heated exchange cannot be expected to suppress their emotions at a moment's urging by one who has been their adversary. As the administrative law judge recognized, the Act's protection of employee participation in grievance meetings would be seriously threatened if the employer could at any emotional and argumentative point during the meeting call an immediate halt to the operation of the Act. We hold therefore that the Board may extend the Act's protection to a cooling-off period of brief duration at the termination of grievance meetings.

Of course, the appropriateness and duration of such a cooling-off period will depend upon the facts of each case, and this determination should be left to the sound discretion of the Board. As noted above, the Board has the primary responsibility for weighing the conflicting rights of the parties to determine whether an employee's conduct in connection with a grievance meeting is protected by the Act; this responsibility is not diminished when the case turns on the termination of the grievance meeting rather than on the employee's allegedly "indefensible" conduct. In this case

the Board clearly acted within its authority and discretion. We therefore deny the Postal Service's petition for review and grant the Board's cross-application for enforcement of its order.

PETITION DENIED and ORDER ENFORCED.