**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SOUTHWESTERN BELL TELEPHONE COMPANY, Respondent.**

No. 82–4172

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Nov. 26, 1982.

---

Elliott Moore, Deputy Associate Gen. Counsel, NLRB, Washington, D.C., for petitioner.

Gary L. Buckwalter, Houston, Tex., for respondent.

Before GEE, RANDALL and TATE, Circuit Judges.

## PER CURIAM:

This case comes to us from the National Labor Relations Board on an application for enforcement and a cross-petition for review. *See* National Labor Relations Act § 10(e)–(f), 29 U.S.C. § 160(e)–(f) (1976). The Southwestern Bell Telephone Company claims that a three-member panel of the Board erroneously found that the Company had unfairly disciplined one of its employees, James Leuckan, for insubordination, and that he was wrongfully awarded backpay for the four hours during which he was suspended. Since we find that the Board's order is supported by substantial evidence, we order that it be enforced.

These proceedings originally arose out of a dispute between Leuckan and one of his immediate supervisors, Donald Sony. Leuckan was a shop steward for Local 12222 of the Communication Workers of America. In his capacity as such, he had negotiated a provisional compromise agreement with Sony concerning the Company's system of distributing overtime work assignments. All appeared to have been worked out smoothly when, because of a small hitch in the arrangements, Sony decided to cancel the agreement. He accordingly walked over to Leuckan's desk and informed him of his decision. Leuckan's temper soon flared, and he asserted loudly, "I'm going to .... I'll see you fry."

Another supervisor, Dale Armstrong, interceded and told Leuckan to calm down and discuss the matter later. Leuckan agreed that he should keep his voice down, but asked Sony if they could continue the discussion in a nearby empty office. Sony readily consented, and the two retired to the office, where the debate soon became quite heated. Leuckan again remarked,

"I'll see you fry, if I have to do it myself." Sony responded by telling Leuckan to be quiet and go back to work. Leuckan immediately did so, but commented to supervisor Armstrong as he returned to work, "I'm going to see that [expletive deleted] fry."

The argument between Sony and Leuckan continued during the next day. Sony and Armstrong summoned Leuckan and another union steward, Sharon Turnstall, into an empty office to give Leuckan a formal, written warning that his intemperate comments of the previous day constituted insubordination and would not be tolerated in the future. Leuckan asked Sony to explain, and Sony responded by telling Leuckan to "shut up." Leuckan then stood up and prepared to leave the room, saying, "I don't have to take this [expletives deleted]."

Turnstall prevailed upon him to stay, but when it appeared that Sony would not allow her to speak on his behalf, he demanded the opportunity to call a representative of the union. Sony shouted, "You're not calling anybody. This is my meeting. I'll tell you who can talk and who can't talk." When Leuckan repeated his request for a representative from the union, Sony announced, "You're suspended ... [for] [i]nsubordination," and told him to leave the building for four working hours.

"Thus," in the words of the administrative law judge, "Leuckan was suspended for four hours and lost four hours' pay, and that is what this case is all about."

The administrative law judge found that the company's attempt to punish Leuckan for his variously embroidered "fry" remarks violated section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) (1976). The ALJ further found that the harsher remarks of the next day fell within the ambit of the provoked insubordination doctrine—an employee may not be provoked into an intemperate outburst by the threatened imposition of illegal punishment—and therefore, too, could not constitute the kind of insubordination that would justify the Company in suspending Leuckan from work. The panel of the Board agreed, and adopted the findings and recommenda-

tions of the ALJ. Leuckan was awarded four hours' backpay, and the letter of censure was ordered removed from his personnel file. We think that the order should be enforced.

■ The scope of our review, as both parties agree, is quite limited. We must determine "[w]hether on the record as a whole there is substantial evidence to support" the decision of the Board. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 491, 71 S.Ct. 456, 466, 95 L.Ed.2d 456 (1951); *see* NLRA § 10(e)–(f), 29 U.S.C. § 160(e)–(f) (1976); *Omni International Hotels, Inc. v. NLRB*, 606 F.2d 570, 573 (5th Cir.1979). Congress has, in the first instance, entrusted the detailed implementation of the NLRA to the Board, which has deliberately been given considerable leeway in applying its expertise to the myriad factual situations that come before it daily. *See, e.g., Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 798, 65 S.Ct. 982, 985, 89 L.Ed. 1372 (1945); *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 194, 61 S.Ct. 845, 852, 85 L.Ed. 1271 (1941); *NLRB v. South Central Bell Telephone Co.*, 688 F.2d 345, 351–52 (5th Cir.1982). Like the Supreme Court, we are therefore "slow to overturn an administrative decision" of the Board. *NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105, 112, 76 S.Ct. 679, 684, 100 L.Ed. 975 (1956).

This case presents the issues of whether, first, Leuckan was properly reprimanded for his several "fry" remarks, and second, whether he was properly suspended for his intemperate language at the resulting disciplinary meeting the following day. We address each issue in turn.

■ The original dispute between Leuckan and Sony, as explained above, grew out of negotiations about the terms and conditions of employment—how overtime hours were to be assigned. The standards that the Board is required to apply in examining the intemperate remarks of participants in this kind of negotiation are well settled. *See Bettcher Manufacturing Corp.*, 76 N.L.R.B. 526, 527 (1948). The rule is essentially a balancing test between the right of the

employer to maintain discipline in his shop and the heavily protected right of the employees to bargain effectively under section 7 of the Act, NLRA § 7, 29 U.S.C. § 157 (1976): to fall without the ambit of the protection of the statute, the employee's language must actually be "*indefensible* in the context of the grievance involved." *Crown Central Petroleum Corp. v. NLRB,* 430 F.2d 724, 731 (5th Cir.1970) (quoting *Hugh H. Wilson Corp. v. NLRB,* 414 F.2d 1345, 1355–56 (3d Cir.1969), *cert. denied,* 397 U.S. 935, 90 S.Ct. 943, 25 L.Ed.2d 111 (1970)) (emphasis in original).

■ Any given Board decision under this test will necessarily be a value judgment heavily dependent upon the particular facts of the case. *See United States v. NLRB,* 652 F.2d 409, 411 (5th Cir.1981) (reviewing the "indefensible under the circumstances" test as applied in this Circuit). We therefore turn to the record to determine whether the Board's finding that Leuckan's remarks were defensible under the circumstances may be supported by substantial evidence. We think that it is.

When Leuckan was told that he was raising his voice, he immediately agreed that he was talking too loud, and asked his supervisor to continue the discussion in the privacy of a nearby office. The various "fry" remarks, in the judgment of the Board, did not constitute the kind of indefensible verbal abuse that is required to take a negotiating discussion outside of the protection of section 7. The Company nonetheless insists that Leuckan's comments were so extreme, so vituperative, and so often repeated that they should fall outside the rule. We can only reply that however sympathetic we might be to the Company's plight, we simply cannot adopt the Company's arguments because our review is restricted to the substantial evidence test outlined above. The ALJ carefully considered the Company's version of what transpired, and just as carefully rejected it:

> In my view the nature and tenor of the testimony of Sony, Armstrong and Leuckan at the hearing in which they described these events does not warrant the Respondent's vivid depiction of a tension-drawn confrontation, but merely one in which both Sony and Leuckan became somewhat angered and Leuckan made, at most, an ambiguous statement concerning the fact that he would see Sony fry. There is nothing in the record to give guidance as to what the special meaning, if any, of this statement might have been, nor is there anything other than the self-serving statement of Sony that, under all the circumstances, he had any reason to fear for his immediate or future safety or that the statement conveyed to him any intent by Leuckan to do him physical harm.

260 N.L.R.B. at ——. Sony, after all, would hardly have retired to the private office alone with Leuckan if he had feared an imminent punch in the nose. In short, we do not think that the present case even approaches the line where "substantial" shades over into "insubstantial" evidence.

Implicitly recognizing its small chance of success under the generous "indefensible under the circumstances" test, the Company has attempted to show that the test simply does not apply. The Company first claims that the "fry" remarks constituted "personal abuse," which does not come within the protection of the rule. This is, however, a plain misstatement of the law. *See* the cases cited *supra.*

■ Second, the Company argues that the rule does not cover negotiations in an open work area, where non-participating employees can see the breakdown in employer-employee discipline that inevitably accompanies heated negotiations. This objection also misstates both the law and the facts. It is well settled that the public or closed-door setting of a dispute is only one of the many considerations that the Board looks at in determining the scope of permissible language. *See, e.g., United States v. NLRB, supra,* 652 F.2d at 410 (argument over working conditions carried out onto workroom floor); *NLRB v. Leece-Neville Co.,* 396 F.2d 773 (5th Cir.1968) (argument between employee and plant manager carried on in full view of entire assembly of

company employees). The record clearly shows, furthermore, that Sony deliberately chose to begin the dispute in the workroom by approaching Leuckan at his desk, which was in full view of the other employees. Having chosen to argue in front of the other workers, the Company can hardly be heard to complain about the public nature of the first part of the discussion. Indeed, it was Leuckan who first suggested that the two retire to a private office to continue the negotiations.

■■ Third, the Company alleges that the negotiations between Leuckan and Sony about overtime assignments were somehow not real negotiations at all because they were conducted "outside the [formal] grievance channels." Again, the Company misstates both the facts and the law. Section 7 rights are not now and never have been confined to negotiations conducted only during formal grievance, arbitration, or labor contract bargaining sessions. *See, e.g., United States v. NLRB, supra,* 652 F.2d at 410 ("informal grievance meeting"); *NLRB v. Florida Medical Center, Inc.,* 576 F.2d 666, 669 (5th Cir.1978) ("heated exchange" wholly outside of the context of any meeting, formal or informal). The Board's rationale for the broad scope accorded section 7 rights is simple:

> The informal resolution of latent grievances is a recognized, and indeed essential, component of the parties' grievance procedure. Without such informal resolutions, there is a risk of destroying the effectiveness of that procedure by weighing it down with formalized grievances. Unless employees are assured that they will be treated as equals when engaged in the informal resolution stage and that

they will be free from discipline for freely speaking their minds, they will be discouraged from seeking informal resolution and encouraged to seek the protections of the more formalized grievance procedure.

*Ryder Truck Lines, Inc.,* 239 N.L.R.B. 1009, 1011 (1978). Since the record unmistakably shows that Leuckan and Sony were engaged in resolving a dispute about overtime work assignments—which no one disputes falls under the rubric of "collective bargaining or other mutual aid or protection" within the meaning of section 7—the Company's claim that informal negotiations somehow do not "count" must be rejected. It therefore follows that the Company's attempt to discipline Leuckan for his intemperate language during the first day of the dispute was unlawful. *See NLRB v. Washington Aluminum Co.,* 370 U.S. 9, 82 S.Ct. 1099, 8 L.Ed.2d 298 (1962) (employer violation of employee's section 7 rights constitutes unfair labor practice under section 8(a)(1)).[1]

■ The second major issue, then, is whether the Company could lawfully suspend Leuckan for his outbursts at the next day's disciplinary meeting. We hold that it could not. It has long been settled that an employer may not rely on employee conduct that it has unlawfully provoked as a basis for disciplining an employee. *See, e.g., NLRB v. Steinerfilm, Inc.,* 669 F.2d 845, 851–52 (1st Cir.1982) (ordering reinstatement of discharged employee where discharge was result of employee's intemperate reaction to unfair treatment by employer); *Florida Medical Center, supra,* 576 F.2d at 673 (same); *NLRB v. Mueller Brass Co.,* 501 F.2d 680, 685–86 (5th Cir.1974) (also applying the doctrine of provoked insubor-

---

1. Moreover, to the extent that the Company's argument appears to suggest that Sony's renunciation of the tentative overtime agreement somehow limited Leuckan's right to pursue the matter, it is also incorrect as a matter of law. It has long been well settled that an employer may not, by its own fiat, declare a matter closed and thus limit the employees' right to protest. *See, e.g., United States v. NLRB, supra,* 652 F.2d at 412. We note in passing that the present case, unlike many of the precedents cited by the Company, concerns neither an "equal time" speechmaking dispute nor simple vituperation, unaccompanied by the genuine existence of a grievance negotiation. *Cf. Boaz Spinning Co. v. NLRB,* 395 F.2d 512, 515–16 (5th Cir.1968) (an "equal time" case, where the employer's right to suppress employee dissent is greater than it is here); *Chemvet Laboratories, Inc. v. NLRB,* 497 F.2d 445, 451–53 (9th Cir.1974) (strong language cause for dismissal of one who, though a union supporter, was not acting in her capacity as such at the time in question).

dination, and explaining its rationale). In this case, the meeting on the second day—which was held to discipline Leuckan unlawfully for his conduct of the previous morning—clearly provoked the outburst that ostensibly justified the four-hour suspension. The doctrine of provoked insubordination thus applies, rendering the suspension illegal.

The order of the Board is therefore ENFORCED.