**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| TREVOR MCCARDLE,[1] | DOCKET NUMBER |
| Appellant, | SF-0752-16-0689-I-3 |
| v. | |
| EQUAL EMPLOYMENT | DATE: December 7, 2022 |
| OPPORTUNITY COMMISSION, | |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[2]

<u>Michal B. Shinnar</u>, Esquire and <u>Renn C. Fowler</u>, Esquire, Silver Spring, Maryland, for the appellant.

---

[1] After the petition for review submissions were filed, the appellant's attorney filed a motion for substitution, explaining that Mr. McCardle died on August 4, 2019, and requesting that Yolanda Acuna, Mr. McCardle's sole heir, be substituted in his place. Petition for Review File, Tab 9. The motion includes a letter of instruction from Ms. Acuna, a California death record from Lexis-Nexis, and a declaration made under penalty of perjury from Ms. Acuna. *Id.* at 5-7. If an appellant dies, the processing of an appeal will only be completed upon substitution of a proper party. 5 C.F.R. § 1201.35(a). Motions to substitute must be filed with the Board within 90 days after the death of a party except for good cause shown. 5 C.F.R. § 1201.35(b). The appellant's attorney filed the motion to substitute on March 3, 2022, which was more than 90 days after Mr. McCardle's death. However, in the absence of a timely substitution of a party, the processing of an appeal may continue if the interests of the proper party will not be prejudiced. 5 C.F.R. § 1201.35(c). No such prejudice exists here, and the agency has not opposed the motion; thus, we find it appropriate to continue with the processing of this appeal. Both Ms. Acuna and Mr. McCardle will be referred to as "the appellant."

[2] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

Anabia Hasan, Washington, D.C., for the agency.

Leroy T. Jenkins, Jr, Washington, Delaware, for the agency.

Maneesh Varma, Birmingham, Alabama, for the agency.

Michael J. O'Brien, New York, New York, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

**FINAL ORDER**

¶1     The appellant has filed a petition for review of the initial decision, which sustained his removal from the agency for various acts of misconduct and found that he did not prove any of his affirmative defenses. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. However, we REVERSE those portions of the initial decision which sustained specification 2 of the misuse of Government resources charge and which found that the appellant did not make a whistleblowing disclosure. We MODIFY the

initial decision (1) to hold that the agency did not prove specification 2 of the misuse of Government resources charge, (2) to find that the appellant proved that his whistleblowing disclosure was a contributing factor to his removal, but the agency proved by clear and convincing evidence that it would have removed him in the absence of such disclosure, and (3) to reanalyze the appellant's equal employment opportunity (EEO) retaliation and disability discrimination claims in light of more recent case law. Notwithstanding these modifications, we sustain the misuse of Government resources charge, and we find that the appellant did not prove his reprisal affirmative defenses. Except as expressly MODIFIED by this Order, we AFFIRM the initial decision.

## BACKGROUND

¶2    The following facts, as recited in the initial decision, are generally undisputed. *McCardle v. Equal Employment Opportunity Commission*, MSPB Docket No. SF-0752-16-0689-I-3, Appeal File, Tab 11, Initial Decision (ID). Effective October 16, 2015, the agency removed the appellant from his Paralegal Specialist position under 5 U.S.C. chapter 75 based on charges of improper conduct, misuse of the agency's email system, and misuse of Government resources. *McCardle v. Equal Employment Opportunity Commission*, MSPB Docket No. SF-0752-16-0689-I-1, Initial Appeal File (IAF), Tab 5 at 44-56, 146-53. The appellant filed an EEO complaint with the agency, in which he alleged that his removal was based on discrimination and retaliation. IAF, Tab 1 at 21-24. Because the agency did not issue a final agency decision on the appellant's EEO complaint within 120 days, he filed a Board appeal contesting his removal and raising various affirmative defenses. IAF, Tab 1; ID at 2; *see* 5 C.F.R. § 1201.154(b)(2).

¶3    A multi-day hearing was held. *McCardle v. Equal Employment Opportunity Commission*, MSPB Docket No. SF-0752-16-0689-I-2, Appeal File (I-2 AF) Hearing Transcripts (HTs); ID at 2. The administrative judge issued a 75-page

initial decision, in which he found that the agency proved all three charges of misconduct, and the appellant failed to prove his affirmative defenses of sex discrimination, disability discrimination (based on a perceived disability), retaliation for EEO activity, reprisal for whistleblowing disclosures and/or protected activity, and due process violations. ID at 8-63. The administrative judge further found that there was a nexus between the appellant's misconduct and the efficiency of the service and that the removal penalty was reasonable under the circumstances. ID at 63-68. Following, the appellant filed a petition for review, to which the agency filed a response, and the appellant filed a reply. Petition for Review (PFR) File, Tabs 3, 7-8.

## DISCUSSION OF ARGUMENTS ON REVIEW[3]

¶4        In an appeal before the Board of a removal taken under 5 U.S.C. chapter 75, an agency bears the burden to prove by preponderant evidence the charged misconduct, a sufficient nexus between the charge and the efficiency of the service, and the reasonableness of the imposed penalty. *Pope v. U.S. Postal Service*, 114 F.3d 1144, 1147 (Fed. Cir. 1997); *see* 5 U.S.C. §§ 7513(a), 7701(c)(1)(B).

### The improper conduct charge is sustained.[4]

¶5        The improper conduct charge contained a single narrative specification alleging that the appellant made statements that disrupted the workplace. IAF,

---

[3] On review, the appellant does not challenge the administrative judge's finding that he failed to prove his disparate treatment sex discrimination claim. ID at 43; PFR File, Tabs 3, 8. We find no reason to disturb this finding and therefore affirm it.

[4] The agency is not required to affix a label to a charge of misconduct; it may simply describe actions that constitute misbehavior in narrative form in its charge letter. *Otero v. U.S. Postal Service*, 73 M.S.P.R. 198, 202 (1997). However, if the agency chooses to label an action of alleged misconduct, then it must prove the elements that make up the legal definition of the charge, if any. *Id.* Accordingly, because the agency generically labeled each of the charges in the appellant's removal and provided a narrative account of the specifications, it was appropriate for the administrative judge to assess whether the agency met its burden of proving that the appellant engaged in the conduct for which he was charged. IAF, Tab 5 at 146-50; ID at 8, 26, 28.

Tab 5 at 146-48. The narrative describing the charge included the following allegations: (1) the appellant said to a coworker that he felt like he was "gonna fucking kill someone"; (2) he said to the same coworker that, if he could, he would "take . . . out" his first- and second-level supervisors; (3) he sent an agency-wide email on September 19, 2014, which caused several female coworkers to "express[ ] fear for their personal safety around [him]" and they were sent home; and (4) on September 23, 2014, Federal Protective Service (FPS) searched his possessions while he was at work and found a "folding razor blade/box cutter" in his backpack, an item that was prohibited in the Federal facility where he worked. *Id.* at 147-48.

¶6        In the initial decision, the administrative judge considered the evidence of record, made demeanor-based credibility determinations from the hearing testimony, and concluded that the agency proved by preponderant evidence each allegation of misconduct raised in the narrative and the overall charge. ID at 8-25. The appellant's conduct discussed in the narrative was clearly improper and caused a disruption in the workplace. The administrative judge's findings and analysis on this charge was detailed, precise, and corroborated throughout the record. *Id.* The Board must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). The appellant has not presented such sufficiently sound reasons. PFR File, Tabs 3, 8. Therefore, we affirm the administrative judge's conclusion sustaining this charge. ID at 8-25; *see Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 6 (2016) (finding no reason to disturb the administrative judge's findings where she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions); *Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

¶7        We find unpersuasive the appellant's assertion on review that the agency did not identify any "misconduct or disruption" through its description of this charge in the proposal. PFR File, Tab 3 at 7. Indeed, the narrative portion of this charge within the proposal describes in detail the appellant's statements that he felt like he was "gonna fucking kill someone" and that he would "take . . . out" his first- and second-level supervisors, his agency-wide email (which alarmed several female coworkers), and the discovery of a prohibited box cutter in his backpack in the workplace. IAF, Tab 5 at 146-48. The proposal, which contained dates and accompanying circumstances, adequately put the appellant on notice of the specific allegations of misconduct and disruption. *Id.*; *see Otero v. U.S. Postal Service*, 73 M.S.P.R. 198, 202-03 (1997) (holding that the agency's two-page narrative description of the appellant's misconduct, which contained dates, times, names of participants, and exact quotes of offense language used, met the requirements of notice and fairness). Unquestionably, the appellant's conduct, as set forth in the proposal and proven by the agency, taken individually or together, is improper. *See Wiley v. U.S. Postal Service*, 102 M.S.P.R. 535, ¶¶ 2, 12 (2006) (upholding, inter alia, a charge of improper conduct because the agency proved that the appellant said that he was going to "get[ ] [his] gun and shoot[ ] up the place," among other things, which violated agency policy), *aff'd*, 218 F. App'x 1001 (Fed. Cir. 2007) (per curiam).

¶8        The appellant also asserts on review that the administrative judge erred by finding that he violated the Items Prohibited From Federal Facilities list by bringing a box cutter or knife to work.[5] PFR File, Tab 3 at 17-19. The appellant focuses on 18 U.S.C. § 930(d)(3), which outlines exceptions when an individual may be permitted to carry a firearm or dangerous weapon in a Federal facility, and it includes the "lawful carrying of firearms or other dangerous weapons in a

---

[5] Although the appellant framed this argument as a claim of a due process violation, it appears that he is challenging the administrative judge's factual findings and conclusions concerning this portion of the charge. PFR File, Tab 3 at 17-19.

Federal facility incident to hunting or other lawful purposes." *Id.* However, this cited exception does not apply in the appellant's situation. As the administrative judge found, when looking to the applicable policy in place at the Federal building where the appellant worked on the day in question, "[r]azor-type blades such as box cutters" and "utility knives" were on the list of prohibited items unless they met the exemption described in 18 U.S.C. § 930(d)(3). IAF, Tab 7 at 17; ID at 24-25. The evidence demonstrates that the item found in the appellant's backpack while at work on September 23, 2014, as outlined in this charge in the proposal, was a prohibited box cutter or utility knife. I-2 AF, Tab 41 at 5 (picture of the prohibited box cutter).[6] Therefore, the administrative judge correctly found in the initial decision that the agency proved this portion of the improper conduct charge. ID at 24-25.

The misuse of the agency's email system charge is sustained.

¶9        In this charge and single specification, the agency alleged that the appellant used his agency email address and sent an email to the entire agency on September 19, 2014, without obtaining supervisory approval, which disrupted the workplace. IAF, Tab 5 at 148. The appellant, who began working for the agency in December 2010, claims that at the time he sent this agency-wide email, he was not aware of any policy requiring permission before sending. HT 2 at 116 (testimony of the appellant); ID at 26. Yet, the agency-wide policy, dated July 5, 2011, which was distributed to all agency employees, stated, in relevant part, that "[a]ny e-mail message which is to be sent to all [agency] employees . . . must be approved by the sender's Office Director before it can be distributed."[7] IAF,

---

[6] We are not persuaded by the appellant's assertion that the item satisfied one of the exemptions in 18 U.S.C. § 930(d)(3) or otherwise constituted a pocket knife. PFR File, Tab 3 at 18-19.

[7] The appellant's claim on review that the applicable policy in place when he sent his September 19, 2014 email contains no requirement for supervisory approval before sending an agency-wide email, PFR File, Tab 8 at 9, is contradicted by the evidence of record, IAF, Tab 7 at 26.

Tab 7 at 26.  The administrative judge found that the agency proved by preponderant evidence that the policy in place at the time that the appellant sent the September 19, 2014 email required managerial approval before sending agency-wide, he did not obtain such approval before sending, and doing so constituted a misuse of the agency's email system and caused a workplace disruption.  ID at 26-28.  In reaching this finding, the administrative judge relied on the evidentiary record, to include credibility determinations based on the hearing testimony of several agency witnesses.  *Id.*; *Haebe*, 288 F.3d at 1301.  Upon our review, we find that the administrative judge appropriately found that the agency proved this charge by preponderant evidence.  These findings are substantiated, reasoned, and appropriate.  ID at 26-28; *Clay*, 123 M.S.P.R. 245, ¶ 6; *Broughton*, 33 M.S.P.R. at 359.  Thus, we affirm this conclusion from the initial decision.

¶10        To the extent that the appellant asserts on review that the agency issued an email policy after he sent the September 19, 2014 email, and it held him to that subsequent standard in the removal proceedings, we are not persuaded by such an assertion.  PFR File, Tab 3 at 12-14.  The decision letter noted that the agency issued a revised policy regarding use of the agency's email system on December 19, 2014.  IAF, Tab 5 at 48.  However, the deciding official noted therein that the appellant was only being held to the standard indicated in the policy that was in effect at the time he sent the September 19, 2014 email.  *Id.*  Similarly, the proposal letter cited the policy in effect at the time the appellant engaged in the alleged misconduct and not the subsequent policy.  *Id.* at 148.  Furthermore, the appellant's contention that he tried to meet with his Office Director prior to sending the email, PFR File, Tab 3 at 13, tends to show that he was aware of the requirement for supervisory approval in place at the time.  In any event, the agency's evidence proved that the appellant never had the proper permission to send the September 19, 2014 email.

¶11    The appellant also asserts that the agency should have merged the portion of the improper conduct charge pertaining to the September 19, 2014 agency-wide email that he sent, which caused a disruption in the workplace, and the misuse of the agency's email system charge, which the agency asserts also caused a disruption in the workplace. PFR File, Tab 3 at 12-13, 13 n.3. The merger of charges is appropriate when they are based on the same misconduct and proof of one charge automatically constitutes proof of the other charge. *Shiflett v. Department of Justice*, 98 M.S.P.R. 289, ¶ 5 (2005). The appellant's assertion in this regard is unpersuasive. The fact that the agency proved the improper conduct charge did not mean that it automatically proved the misuse of agency email system charge. The crux of the relevant portion of the improper conduct charge involved the disruption to the workplace that the content of the appellant's email (and other statements) caused and did not address the supervisory approval requirement. IAF, Tab 5 at 146-48. The root of the misuse of agency email system charge centered on the appellant not having the proper approval from management to send an agency-wide email. *Id.* at 148. Because the allegations are distinct, the administrative judge was correct to assess these charges separately.

We modify the initial decision to find that the agency failed to prove specification 2 of the misuse of Government resources charge, but we conclude that the agency proved this charge based on our decision to sustain specification 1.

¶12    This charge contained the following two specifications: (1) the appellant's misuse of his Accurint,[8] Lexis, and Westlaw accounts; and (2) the appellant's violation of the agency's Network/Desktop Rules of Behavior. IAF, Tab 5

---

[8] According to the testimony of the deciding official, Accurint is a "service that the [agency] uses to find witnesses and to obtain corporate and other entity information about respondents in charges of discrimination." HT 1 at 41 (testimony of the deciding official). He further described Accurint as "a personal identifiable information tool." *Id.* at 42 (testimony of the deciding official).

at 148-50. In the first specification, the agency alleged that the appellant used these electronic resources, paid for by the agency, to further his personal pursuits, to include searches related to individuals and corporations not relevant to his work, and such use was prohibited. *Id.* Through the second specification, the agency alleged that the appellant violated its Network/Desktop Rules of Behavior because he kept a personal "journal" on the agency shared drive, accessible by other employees, that contained material involving violence, bizarre and disturbing material, including rape, "light bulb sodomy," violence towards women and children, and contained derogatory terms like "faggot," among other things. *Id.* at 150. This specification separately charged that, despite being counseled otherwise, the appellant "continued to behave inappropriately toward[s] female legal interns." *Id.* The specification stated that the agency found "what appears to be a multi-page letter or e-mail from [the appellant] to another female legal intern" who had written to him about the upcoming bar examination, and he responded by telling her, among other things, "that she should not worry about the bar exam and that if she went to [his] Facebook page she could see a picture of [him] wearing nothing but sour cream and a Band-aid." *Id.*; IAF, Tab 7 at 126.

¶13    The applicable Network/Desktop Rules of Behavior allowed "limited use of [G]overnment office equipment for personal, noncommercial needs . . . during the employee's non-work time" and specifically prohibited "discriminatory remarks[ ] or other text or communication that degrades individuals or groups." IAF, Tab 7 at 9-10. Upon review, we affirm the administrative judge's decision to sustain the first specification of this charge. Such decision by the administrative judge is reasoned and supported by the evidentiary record, to include his credibility findings from the hearing. ID at 28-34; *Haebe*, 288 F.3d at 1301; *Clay*, 123 M.S.P.R. 245, ¶ 6; *Broughton*, 33 M.S.P.R. at 359.

¶14    The appellant contends that the agency erred when it determined in his removal decision letter that he changed his email address on his Westlaw account

with the "intent to circumvent" the agency's ability to control his Westlaw use. PFR File, Tab 3 at 15-17; IAF, Tab 5 at 50. This contention is irrelevant. The root of this specification concerned the appellant's personal use of these systems, which for the reasons thoroughly outlined in the initial decision, the agency met its burden of proving. IAF, Tab 5 at 48-50, 148-50; ID at 28-34. Specifically, the appellant admitted that he used these services in furtherance of his personal lawsuit against a non-Government entity. *See, e.g.*, HT 2 at 173-75 (admitting that he used Accurint and Lexis for a private lawsuit against Citibank) (testimony of the appellant). Whether the appellant intended to circumvent the agency when he changed his Westlaw email address is an incidental detail that has no bearing on our decision to affirm the administrative judge's decision to sustain this specification.

¶15        Although a close call, we do, however, reverse the administrative judge's decision to sustain specification 2 of this charge. ID at 34-38. In this specification, the agency alleged that the appellant placed his journal containing inappropriate content on the agency's network "share[d] drive." IAF, Tab 5 at 150. The agency's network shared drive allowed coworkers to share documents with other employees in that office. *Id.* The agency alleged that, because of its location on the shared drive, the document was available to all employees in his office. *Id.*

¶16        We disagree with the administrative judge's assessment of this part of specification 2. We find instead that the agency failed to prove by preponderant evidence that the appellant's journal was ever maintained on the shared drive. Indeed, the record reflects, and the appellant admitted, that he kept his journal on his work computer. HT 2 at 184 (testimony of the appellant). While the placement of these materials on his work computer could be a misuse of Government resources, the agency did not specifically charge the appellant with such misconduct in the proposal. IAF, Tab 5 at 150; *see Minor v. U.S. Postal Service*, 115 M.S.P.R. 307, ¶ 10 (2010) (stating that the Board is required to

review the agency's decision on an adverse action solely on the grounds invoked by the agency; the Board is not to substitute what it considers to be a more proper basis). We recognize that the appellant's work computer could be remotely accessed by other employees with administrative rights, as it was connected to the agency's network. ID at 34 (citing the appellant's testimony). However, contrary to the agency's assertion, a file on his work computer—and not on the shared drive—was not available to all employees in the office. Because we disagree with the administrative judge's analysis of this portion of specification 2, we reverse his analysis herein.[9] The administrative judge did not make specific findings in the initial decision regarding the other portion of specification 2, involving the appellant's alleged correspondence with a former female intern. ID at 37-38. We need not resolve this portion of specification 2 because, for the above reasons, we find that the agency did not prove the other portion of the specification 2 involving the journal.

¶17    Even though the agency only proved one of the two specifications, we still find it appropriate to affirm the administrative judge's conclusion that the agency proved the overall misuse of Government resources charge. *See Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990) (holding that where more than one event or factual specification support a single charge, proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge).

We are not persuaded that the agency committed any due process violations.

¶18    Nearly all of the appellant's arguments on review are styled as due process violations, PFR File, Tab 3 at 5-26, Tab 8 at 4-16, but we have largely addressed them in this Final Order as challenges to the administrative judge's analysis of

---

[9] Because we are not sustaining specification 2 of this charge, we need not address the appellant's contention on review that the agency failed to provide him with a copy of the applicable Network/Desktop Rules of Behavior prior to his replies to the proposal. PFR File, Tab 3 at 10-11.

the specific charges of misconduct. However, the appellant raised four specific due process violation claims below that the administrative judge addressed. I-2 AF, Tab 39 at 5. For example, he asserted that (1) the agency's general charge construction was impermissibly vague, (2) the agency specified the appellant's misconduct throughout the proposal by using conclusory assertions without setting forth supporting facts, (3) the deciding official concluded that the appellant engaged in conduct that was not set forth in the proposal notice and then relied upon that determination in rendering his decision, and (4) the deciding official relied upon information in rendering his removal decision that was not provided to the appellant before any of his replies. *Id.* In the initial decision, the administrative judge determined that the appellant failed to prove each of these claims. ID at 38-40, 66-68.

¶19     A public employee has a property interest in his continued employment, meaning the Federal Government, as an employer, cannot deprive an employee of such interest without due process. *Wilson v. Department of Homeland Security*, 120 M.S.P.R. 686, ¶ 7 (2014) (citing *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538 (1985)), *aff'd*, 595 F. App'x 995 (Fed. Cir. 2015). As outlined by the Supreme Court, the essentials of due process in this context are notice of the reasons for discipline and an opportunity to respond. *Loudermill*, 470 U.S. at 546.

¶20     Additionally, procedural due process guarantees are not met if the employee has notice of only certain charges or portions of the evidence and the deciding official considers new and material information; therefore, it is constitutionally impermissible to allow a deciding official to receive additional material information that may undermine the objectivity required to protect the fairness of the process. *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1376 (Fed. Cir. 1999). Not every ex parte communication is a procedural defect so substantial and so likely to cause prejudice that it undermines the due process guarantee and entitles the claimant to an entirely new administrative proceeding;

rather, only ex parte communications that introduce new and material information to the deciding official will violate the due process guarantee of notice. *Id.* at 1376-77. The Board will consider the following factors, among others, to determine whether an ex parte contact is constitutionally impermissible: (1) whether the ex parte communication merely introduces "cumulative" information or new information; (2) whether the employee knew of the error and had a chance to respond to it; and (3) whether the ex parte communications were of the type likely to result in undue pressure upon the deciding official to rule in a particular manner. *Id.* at 1377. When a procedural due process violation has occurred because of ex parte communications, such a violation is not subject to the harmless error test, and the appellant is entitled to a new constitutionally correct administrative proceeding. *Id.*

¶21     We agree with the administrative judge's conclusions outlined in the initial decision finding that the appellant failed to meet his burden of proving a due process violation. ID at 38-40, 66-68. While the agency could have been more precise in the way that it labeled and described the charges of misconduct in the proposal notice, the appellant still knew of the allegations of misconduct against him prior to delivering his replies. IAF, Tab 5 at 57-63, 91-129, 146-53.

¶22     On review, the appellant asserts that the deciding official considered a new and unnoticed "threats" charge and improperly considered the appellant's threatening conduct as an aggravating factor in his penalty determination. PFR File, Tab 3 at 20-23. The mere fact that the appellant's statements that he felt like he was "gonna fucking kill someone" and that he would "take . . . out" his first- and second-level supervisors were described as "threatening" does not mean that the agency charged him with making threats or improperly described his behavior as threatening. IAF, Tab 5 at 46-47, 53; *see Pinegar v. Federal Election Commission*, 105 M.S.P.R. 677, ¶ 28 (2007) (noting that the agency charged the appellant with inappropriate remarks, not with making a threat, and therefore, it was not required to prove whether the conduct constituted a threat). The agency

charged the appellant with improper conduct, and within the proposal, included a description of the appellant's behavior that constituted the misconduct. IAF, Tab 5 at 146-48. Indisputably, the appellant had notice of these allegations of misconduct prior to his replies. As a result, we find no due process violation.

¶23    The appellant further claims on review that the agency violated his due process rights as it relates to the improper conduct charge because the deciding official referenced in the decision letter the September 12 and September 16, 2014 emails that the appellant sent to his coworkers. *Id.* at 46; PFR File, Tab 3 at 6-10. The appellant claims that he never received these emails prior to submitting his replies to the proposal nor did he have notice that the deciding official was considering them. PFR File, Tab 3 at 7-10. It is true that the emails are mentioned in the decision letter but not in the proposal notice, IAF, Tab 5 at 46, 146-53, but the administrative judge found that these emails were "cumulative and/or known to the appellant,"[10] ID at 68. The evidence of record supports the administrative judge's finding in this regard. The deciding official testified that he knew of these emails only because they were mentioned in statements provided by agency employees and a deposition provided by the appellant. IAF, Tab 6 at 52, 65; HT 1 at 88-89 (testimony of the deciding official). The appellant does not claim that he never received a copy of these statements prior to his submitting his replies to the proposal. The deciding official further testified that he never saw the September 12 and September 16 emails, HT 1 at 88 (testimony of the deciding official), meaning there is no way that he could have relied upon the substance of these emails when making his decision. *See Villareal v. Bureau of Prisons*, 901 F.3d 1361, 1365-66 (Fed. Cir. 2018) (finding no due process violation, in part, because the deciding official

---

[10] The agency asserts in its response to the petition for review that the appellant provided this documentation to the deciding official. PFR File, Tab 7 at 13, 17-19. However, the statements of a party's representative in a pleading do not constitute evidence, *Hendricks v. Department of the Navy*, 69 M.S.P.R. 163, 168 (1995), and we cannot independently corroborate the agency's assertion in this regard.

did not rely on the ex parte information when making his decision on the removal). Moreover, it appears that the deciding official cited these emails only to give context for understanding why the appellant's coworker "became increasingly concerned about [the appellant's] erratic behavior" and informed the supervisor that the appellant "reached [his] breaking point." IAF, Tab 5 at 46. Additionally, there is no indication that these emails themselves disrupted the workplace. As a result, there is nothing to suggest that the appellant's due process rights were violated when the deciding official mentioned these emails.

¶24 Similarly, the appellant argues on review that the agency never provided him with a copy of the 2011 email policy relevant to the misuse of the agency's email system charge. PFR File, Tab 3 at 13-14. However, the record shows that the agency provided the appellant with the name of the policy, and then properly cited the relevant portion of the policy in the proposal notice, meaning the appellant had knowledge of what the deciding official was relying on before he submitted his replies to the proposal. IAF, Tab 5 at 148, Tab 7 at 26; *see, e.g.*, *Gill v. Department of the Navy*, 34 M.S.P.R. 308, 311 (1987) (outlining that a proposal notice that sets forth the charges in great factual detail, in conjunction with other evidence, may be considered as part of the agency's valid proof of the charge). Therefore, we find no due process violation.

We modify the initial decision to find that the appellant's September 19, 2014 email contained a whistleblowing disclosure that was a contributing factor in the agency's decision to remove him, but the agency proved by clear and convincing evidence that it would have taken the same action in the absence of the disclosure.

¶25 The appellant alleged in this appeal that the agency's decision to remove him was in reprisal for a whistleblowing disclosure that he made. I-2 AF, Tab 39 at 9-12. Specifically, the appellant described his whistleblowing disclosure as his September 19, 2014 email, which stated, among other things, that someone "doctored" his Official Personnel File (OPF) "to make [his] 7-month enforcement stint [ ] look like a 90-day detail." *Id.* at 9.

¶26     An adverse action appealable to the Board, such as a removal, may not be sustained if it is shown "that the decision was based on any prohibited personnel practice described in [5 U.S.C. §] 2302(b)." 5 U.S.C. § 7701(c)(2)(B).  In order to prevail on the merits of this claim, an appellant must prove by preponderant evidence that he made a whistleblowing disclosure as described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity as described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action outlined in 5 U.S.C. § 2302(a)(2)(A).[11]   5 U.S.C. § 1221(e); *Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 12 (2015).  If an appellant meets his burden, then the Board shall order corrective action unless the agency shows by clear and convincing evidence that it would have taken the same personnel action in the absence of the whistleblowing disclosure and/or protected activity. 5 U.S.C § 1221(e)(2); *see Ayers*, 123 M.S.P.R. 11, ¶¶ 12, 27.

¶27     The administrative judge concluded in the initial decision that the appellant failed to establish that he made a whistleblowing disclosure.[12]   ID at 49-61. Significantly, the administrative judge relied on a July 29, 2013 performance plan certification, in which the appellant acknowledged that his detail to the Enforcement Unit began in July 2013, to find that the appellant did not have a reasonable belief that his detail lasted 7 months.  ID at 58.  The administrative judge noted that the agency had a practice of exercising its discretion to have employees perform tasks in other office sections without a formal detail.  *Id.*  The administrative judge discussed the appellant's contention that the agency issued two Standard Form (SF) 50s within 2 days which evidenced wrongdoing, but he found that the agency was correcting an earlier mistake.  ID at 58-59.  The

---

[11] The appellant's removal, which the agency took under chapter 75, is a personnel action under 5 U.S.C. § 2302(a)(2)(A)(iii).

[12] The appellant did not claim that he engaged in activity protected under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).

administrative judge stated alternatively that, even if the appellant satisfied his burden to prove that he made a whistleblowing disclosure in the email that was a contributing factor in the agency's decision to remove him, he found that the agency proved by clear and convincing evidence that it would have removed him absent such disclosure. ID at 61-63.

¶28    In his petition for review, the appellant argues that his September 19, 2014 email constituted a whistleblowing disclosure. PFR File, Tab 3 at 14. We agree. Protected whistleblowing takes place when an appellant makes a disclosure that he reasonably believes evidences any violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. 5 U.S.C. § 2302(b)(8)(A); *DeLeonardo v. Equal Employment Opportunity Commission*, 103 M.S.P.R. 301, ¶ 6 (2006). An appellant need not show that the matter disclosed actually established a violation or other situation as described in 5 U.S.C. § 2302(b)(8)(A). *DeLeonardo*, 103 M.S.P.R. 301, ¶ 6. Instead, an appellant must prove that the matter disclosed was one which a reasonable person in his position would believe evidenced any of the situations set forth in 5 U.S.C. § 2302(b)(8). *Id.* The proper test for determining whether an appellant had a reasonable belief that his disclosures revealed one of the categories of misconduct described in the whistleblower protection statutes is whether a disinterested observer, with knowledge of the essential facts known to and readily ascertainable by an appellant, could reasonably conclude that the disclosure evidences one of the categories of wrongdoing listed in 5 U.S.C. § 2302(b)(8). *Id.* (citing *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999)).[13]

---

[13] Historically, the Board has been bound by the precedent of the U.S. Court of Appeals for the Federal Circuit on this issue. However, as a result of changes initiated by the Whistleblower Protection Enhancement Act of 2012, Pub. L. No. 112-199, 126 Stat. 1465, extended for 3 years in the All Circuit Review Extension Act, Pub. L. No. 113-170, 128 Stat. 1894, and eventually made permanent in the All Circuit Review Act, Pub. L. No. 115-195, 132 Stat. 1510, appellants may file petitions for judicial

¶29    We find that there is sufficient evidence from which to conclude that the appellant's detail lasted longer than the July 28 to November 15, 2013 time frame identified in his SF-50s created by the agency. IAF, Tab 6 at 94, 101, 103. Contrary to the administrative judge's finding that the appellant knew that the detail began in July 2013, both the appellant and the Enforcement Unit supervisor stated in their respective narrative portions of the performance appraisal record that the appellant's detail to the Enforcement Unit began in or around June 2013. I-2 AF, Tab 40 at 30, 38; ID at 58. Thus, we find that a disinterested person with knowledge of the essential facts would construe from these admissions that the appellant began performing work in the Enforcement Unit in or around June 2013.[14] Similarly, a disinterested person with knowledge of the essential facts would conclude that the appellant continued to perform work as part of his detail in the Enforcement Unit until around December 4, 2013.[15] I-2 AF, Tab 40 at 39 (the appellant's performance appraisal record for the period immediately following his detail was dated from December 4, 2013, to September 30, 2014). This nearly 6-month time frame, from June to December 2013, far exceeds the July 28 to November 15, 2013 time frame memorialized in the appellant's OPF. Under these circumstances, we find that a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the appellant could reasonably conclude that his OPF did not correctly identify the start and end dates

review of Board decisions in whistleblower reprisal cases with any circuit court of appeals of competent jurisdiction. *See* 5 U.S.C. § 7703(b)(1)(B).

[14] Even if we assumed for the purposes of our analysis that the July 14, 2013 start date of the appraisal period coincided with the start date of his detail, I-2 AF, Tab 40 at 27-34, a different outcome is not warranted because a July 14, 2013 start date is 2 weeks earlier than the start of the detail as reflected in the appellant's OPF, IAF, Tab 6 at 101.

[15] The agency's decision to issue multiple SF-50s in mid-December 2013 to correct its own mistake in originally extending the appellant's detail does not warrant a different outcome because the record reflects that he continued to work in the Enforcement Unit for almost 3 weeks after the November 15, 2013 end date of the detail identified in his OPF. IAF, Tab 6 at 103; I-2 AF, Tab 40 at 39.

of his detail to the Enforcement Unit and the agency's apparent manipulation of his SF-50s evidenced some kind of wrongdoing.[16] *See, e.g.*, *Stiles v. Department of Homeland Security*, 116 M.S.P.R. 263, ¶ 17 (2011) (finding that an employee need not prove an actual violation to establish that he had a reasonable belief that his disclosure met the statutory criteria). For these reasons, we find that the appellant's September 19, 2014 email constituted a whistleblowing disclosure, and we modify the initial decision in this regard.

¶30      We further find that the appellant's whistleblowing disclosure was a contributing factor in the agency's decision to remove him on October 16, 2015. To prove that a disclosure was a contributing factor in a personnel action, the appellant need only demonstrate that the fact of, or the content of, the disclosure was one of the factors that tended to affect the personnel action in any way. *Carey v. Department of Veterans Affairs*, 93 M.S.P.R. 676, ¶ 10 (2003). The knowledge/timing test allows an appellant to demonstrate that the disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id.*, ¶ 11; *see* 5 U.S.C. § 1221(e)(1).

¶31      The knowledge element is satisfied because the appellant sent the September 19, 2014 email to the entire agency, thus imputing knowledge to the agency officials involved in his removal. IAF, Tab 5 at 47-48, 148. The timing element is satisfied because the agency removed him approximately 13 months after he sent the email. *Id.* at 44; *see Gonzalez v. Department of Transportation*,

---

[16] On review, the appellant cites 18 U.S.C. § 1001 and 5 C.F.R. § 293.103(b) to support his contention that he disclosed an agency violation of a law or regulation. PFR File, Tab 3 at 14. We find that the appellant's allegations that the agency doctored his OPF so obviously implicate a violation of a law, rule, or regulation that it was unnecessary for him to identify any specific law or regulation that he believed was violated. *DiGiorgio v. Department of the Navy*, 84 M.S.P.R. 6, ¶ 14 (1999).

109 M.S.P.R. 250, ¶ 20 (2008) (finding that the appellant's disclosures were a contributing factor in his removal when they were made over 1-year before the removal); *Redschlag v. Department of the Army*, 89 M.S.P.R. 589, ¶ 87 (2001) (finding that the appellant's disclosures were a contributing factor in her removal when they were made approximately 21 months and then slightly over a year before the agency removed her). Accordingly, we conclude that the appellant has shown that his September 19, 2014 email was a contributing factor in the agency's decision to remove him in October 2015.

¶32    Because the appellant met his burden of proving that he made a whistleblowing disclosure that was a contributing factor in the agency's decision to remove him, the analysis shifts to whether the agency proved by clear and convincing evidence that it would have taken the removal action despite the whistleblowing disclosure. *Ayers*, 123 M.S.P.R. 11, ¶ 12. In determining whether an agency meets its burden, the Board considers the following ("*Carr* factors"): (1) the strength of the agency's evidence in support of its action, (2) the existence and strength of any motive to retaliate on the part of agency officials involved in the decision, and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 11; *see also Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). The Board does not view the *Carr* factors as discrete elements; rather, they are weighed together to determine if the evidence is clear and convincing as a whole. *Elder v. Department of the Air Force*, 124 M.S.P.R. 12, ¶ 42 (2016). The *Carr* factors are nonexclusive, meaning the Board also considers other relevant facts. *See Miller v. Department of Justice*, 842 F.3d 1252, 1257 (Fed. Cir. 2016).

¶33    The agency's evidence to remove the appellant on three charges of misconduct is strong, notwithstanding the fact that we do not sustain specification 2 of the misuse of Government resources charge. As described

herein, the appellant engaged in a pattern of misconduct that is not acceptable in the workplace, including saying that he felt like he was going to kill someone and that he would take out his supervisors, FPS discovering a prohibited box cutter in his backpack while at work, and misusing the agency's email system and certain Government resources. IAF, Tab 5 at 45-54, 146-153. The second *Carr* factor, describing the existence and strength of the agency's motive to retaliate, favors the appellant because the September 19, 2014 email identified by name the agency official who proposed his removal, and he made several disparaging comments about other senior agency officials and the agency's handling of his EEO matter. IAF, Tab 5 at 146, Tab 6 at 94-98; *see Smith v. Department of the Army*, 2022 MSPB 4, ¶¶ 28-29 (considering under the second *Carr* factor whether a "professional retaliatory motive" existed because the disclosures reflected poorly on the agency and its officials). Neither party has identified on review, nor are we aware of, any evidence regarding the third *Carr* factor.[17] When the agency fails to introduce relevant comparator evidence, the third *Carr* factor cannot weigh in favor of the agency. *Soto*, 2022 MSPB 6, ¶ 18.

¶34 Under the circumstances of this case, we conclude that the strength of the agency's evidence outweighs the other two *Carr* factors. Indeed, the agency's decision to remove the appellant was based on his disruptive behavior, including stating that he was going to kill someone, carrying a prohibited box cutter, and misusing Government resources. The serious nature of the substantiated misconduct justifies the agency's concern about the appellant's continued presence in the workplace. HT 1 at 69-77 (testimony of the deciding official).

---

[17] The deciding official stated in the decision letter that he had "never been confronted with this level and type of misconduct" and was "unaware of any similar situations to which [the appellant's] misconduct could be compared." IAF, Tab 5 at 54.

We are left with a firm belief that the agency would have removed the appellant absent his September 19, 2014 email.[18]

<u>We modify the initial decision to supplement the administrative judge's analysis of the appellant's affirmative defense of retaliation for protected EEO activity.</u>

¶35     The appellant's prior EEO complaints involved allegations of discrimination based on race, sex, color, disability, and reprisal for prior EEO activity.  I-2 AF, Tab 40 at 50-53.  Our analysis of his reprisal claims depends, in part, on the nature of these underlying allegations.  Therefore, we will discuss the legal standards first then proceed to an examination of his claims.

*Legal standard for evaluation a claim of reprisal for EEO activity*

¶36     Title VII of the Civil Rights Act of 1964, as amended, requires that such actions "shall be made free from any discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16(a).  An appellant may prove an affirmative defense under this subsection by showing that prohibited discrimination or reprisal was a motivating factor in the contested personnel action, i.e. that discrimination or reprisal played "any part" in the agency's action or decision.  *Pridgen v. Office of Management & Budget*, 2022 MSPB 31, ¶¶ 21, 30.  Nevertheless, while an appellant who proves motivating factor and nothing more may be entitled to injunctive or other forward-looking relief, in order to obtain the full measure of relief available under the statute, including status quo ante relief, compensatory damages, or other forms of relief related to the end result of an employment decision, he must show that discrimination or reprisal was a but-for cause of the employment outcome.  *Id*., ¶ 22.

¶37     By contrast, the appellant's claim of reprisal for EEO activity based on his complaint of disability discrimination is protected by the Americans with Disabilities Act (ADA), as amended by the Americans with Disabilities Act

---

[18] We have reviewed the relevant legislation enacted since the filing of this appeal and find that it does not impact the outcome.

Amendments Act, the standards of which have been incorporated by reference into the Rehabilitation Act. 29 U.S.C. § 791(f); 42 U.S.C. § 12203(a); *Pridgen*, 2022 MSPB 31, ¶¶ 35, 44. To prove a claim of retaliation in violation of the ADA, an appellant must prove "but-for" causation.[19] *Pridgen*, 2022 MSPB 31, ¶¶ 45-48.

*The appellant did not prove his EEO reprisal claims.*

¶38    In the initial decision, the administrative judge concluded that the appellant "offers little to support his assertion that his removal was motivated by unlawful EEO retaliation" other than the fact that he filed various EEO complaints. ID at 42. The administrative judge thus found that the appellant failed to prove by preponderant evidence that his EEO complaints served as a motivating factor in the agency's decision to remove him. ID at 42-43. We discern no error with the administrative judge's analysis regarding his claims involving race, sex, or color discrimination. We have considered the appellant's argument on review that the animus of two agency officials toward him because of his EEO complaints could be imputed to the proposing or deciding officials through the cat's paw theory. PFR File, Tab 3 at 25; *see, e.g.*, *Staub v. Proctor Hospital*, 562 U.S. 411, 415-16 (2011) (describing the term "cat's paw" to describe a case in which a particular management official, acting because of improper animus, influences an agency official who is unaware of the improper animus when implementing a personnel action). Even if we assumed for the purposes of our analysis that these agency officials harbored some animus against him, the appellant offers no evidence that these officials improperly influenced the proposing or deciding officials. Accordingly, we are not persuaded that the appellant's EEO complaints involving

---

[19] The administrative judge and the parties did not have the benefit of our analysis in *Pridgen*. However, we need not remand this claim because the record is fully developed on this issue, and a different outcome is not warranted.

allegations of race, sex, or color discrimination were a motivating factor in the agency's decision to remove him.

¶39    Even if we evaluated the appellant's claim of reprisal based on his prior complaint of discrimination (perceived disability), IAF, Tab 1 at 21-23, a different outcome is not warranted. For the reasons described herein, the appellant cannot meet his burden to prove "but-for" causation.

¶40    On review, the appellant contends that his September 19, 2014 email also constituted protected EEO activity and it served as a motivating factor in agency's decision to remove him. PFR File, Tab 3 at 23-26. The administrative judge did not explicitly consider this email as protected EEO activity in the initial decision, even though the appellant raised this argument before him. I-2 AF, Tab 39 at 5-6; ID at 42-43. We modify the initial decision to consider whether the appellant proved that the agency retaliated against him for his protected EEO activity of sending the September 19, 2014 email.

¶41    We find that the email in question was clearly a motivating factor in the appellant's removal; it formed part of the basis of charge 1 and the sole basis of charge 2, both of which charges the deciding official sustained. IAF, Tab 5 at 46-48, 147-48. We further find that the email was at least partly directed towards opposing discrimination in the workplace. I-2 AF, Tab 57 at 10-11. However, in his decision letter, the deciding official acknowledged that the appellant's email concerned an opposition to discrimination, but he explained that the appellant was being disciplined for the manner of the opposition rather than for the opposition per se. IAF, Tab 5 at 48. We agree.

¶42    The Equal Employment Opportunity Commission and the Federal Courts balance the right to oppose employment discrimination against the employer's need to have a stable and productive work environment. For this reason, the protection of the opposition clause of 42 U.S.C. § 2000e-3(a) only applies where the manner of opposition is reasonable. *Gerry W. v. Department of Defense*, EEOC Appeal No. 0120171168, 2018 WL 5386075, at *12 (Oct. 11, 2018); EEOC

Enforcement Guidance on Retaliation and Related Issues, No. 915.004 § II.A.2.b (Aug. 25, 2016); *see Hochstadt v. Worcester Foundation for Experimental Biology*, 545 F.2d 222, 231-33 (1st Cir. 1976); *Matima v. Celli*, 228 F.3d 68, 79 (2nd Cir. 2000) (explaining the broad consensus among the circuits that "disruptive or unreasonable protests against discrimination are not protected activity under Title VII and therefore cannot support a retaliation claim"). The examination of whether an employee opposed discrimination in a reasonable manner is a context- and fact-specific inquiry, in which the right to oppose employment discrimination against the employer's need to have a stable and productive work environment must be balanced. *Gerry W.*, EEOC Appeal No. 0120171168, 2018 WL 5386075, at *12. In this case, we find that, not only did the appellant violate agency policy by sending his email agency-wide to more than 2,000 recipients, but that the content of the email was highly disrespectful; among other things, the appellant directly impugned his supervisor's integrity, accused her of exercising her authority in a frivolous manner, and stated that she was part of a "little girls' club." IAF, Tab 5 at 147; I-2 AF, Tab 57 at 7. We acknowledge that it may be appropriate to grant some leeway to an employee whose passionate opposition to discrimination deviates somewhat from the bounds of perfect propriety. However, in this case, we find that the disrespectful language in the appellant's September 19, 2014 email, coupled with its dissemination throughout the entire agency, was not a reasonable course of action and that this activity therefore falls outside the protections of Title VII. *See Gerry W.*, EEOC Appeal No. 0120171168, 2018 WL 5386075, at *12 (holding that the appellant's "inflammatory accusations" "that were needlessly copied to several senior management officials or the media" in an effort to "intimidate, taunt, and humiliate" their subjects was not activity protected under Title VII).

<u>We modify the initial decision to clarify the proper standard for analyzing the appellant's disparate treatment disability discrimination claim, still finding that he did not prove this affirmative defense.</u>

¶43    In the initial decision, the administrative judge addressed the appellant's claim that the agency perceived him as disabled because an agency doctor concluded that he posed a meaningful risk of workplace violence.  ID at 43-49.  The administrative judge determined that there was little in the record to suggest that he had a record of a disability that substantially limited one or more major life activities or that the agency misclassified him as having an impairment that substantially limited one or more major life activities, and the removal decision was based on misconduct and not the agency's perception that he had a disability.  ID at 48-49.  Therefore, the administrative judge concluded that the appellant failed to meet his burden to prove disability discrimination.  ID at 49.

¶44    The appellant does not challenge the administrative judge's analysis of his disability discrimination claim on review.  PFR File, Tabs 3, 8.  Notwithstanding, in *Pridgen*, 2022 MSPB 31, ¶¶ 40, 42, the Board held that claims of disparate treatment disability discrimination are subject to the motivating factor/"but-for" cause analytical framework discussed above.  The parties and the administrative judge did not have the benefit of the Board's analysis in *Pridgen* when adjudicating this appeal, but it is unnecessary to remand the appeal because the record is fully developed on this matter.  Even when applying the motivating factor/"but-for" cause framework to this claim, a different outcome is not warranted because the appellant failed to prove that his perceived disability was a motivating factor in the agency's removal decision.

We affirm the removal penalty.[20]

¶45     When, as here, all of the agency's charges are sustained, but some of the underlying specifications are not, the agency's penalty is entitled to deference and only should be reviewed to determine whether it is within the parameters of reasonableness.   *Payne v. U.S. Postal Service*, 72 M.S.P.R. 646, 650 (1996). This is because the agency has primary discretion in maintaining employee discipline and efficiency.   *Thomas v. U.S. Postal Service*, 96 M.S.P.R. 179, ¶ 4 (2004).   The Board will not displace agency's responsibility in this respect, but will instead ensure that managerial judgment has been properly exercised.  *Id.*

¶46      On review, the appellant includes his arguments regarding the removal penalty within his due process violation claims, which we have addressed above. PFR File, Tab 3 at 20-23.   Upon our review of the initial decision, we find that the administrative judge correctly determined that the deciding official considered the relevant factors under *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 306 (1981), and that removal was a reasonable penalty in this instance.   ID at 64-68; IAF, Tab 5 at 52-54.   Particularly, the nature and seriousness of the appellant's misconduct, coupled with his lack of rehabilitative potential and remorse strongly outweigh the mitigating factors of his satisfactory work performance and lack of a prior disciplinary history, warrant a severe penalty. The penalty of removal is still reasonable in light of the fact that we did not sustain specification 2 of the misuse of Government resources charge.   We affirm the initial decision's conclusion pertaining to the penalty.

---

[20] The appellant does not challenge the administrative judge's finding in the initial decision that the agency proved a nexus between the charges of misconduct and the efficiency of the service.   ID at 63-34; PFR File, Tabs 3, 8.   Upon review, we find no reason to disturb this finding and hereby affirm it.

**NOTICE OF APPEAL RIGHTS**[21]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[21] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of

discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[22] The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

---

[22] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:            /s/ for

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.