# United States Court of Appeals
# for the Federal Circuit

---

**LEONARDO VILLAREAL,**
*Petitioner*

**v.**

**BUREAU OF PRISONS,**
*Respondent*

---

2017-2275

---

Petition for review of an arbitrator's decision in No. 16-56932-3 by Noel B. Berman.

---

Decided: August 24, 2018

---

LILLIAM MENDOZA, Rockville, MD, argued for petitioner.

DOMENIQUE GRACE KIRCHNER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by A. BONDURANT ELEY, ROBERT EDWARD KIRSCHMAN, JR., PATRICIA M. MCCARTHY, CHAD A. READLER.

---

Before O'MALLEY, CLEVENGER, and REYNA, *Circuit Judges.*

REYNA, *Circuit Judge*.

Petitioner Leonardo Villareal seeks review of an arbitrator's decision sustaining his removal from employment as a corrections officer with the Bureau of Prisons, claiming that his termination was unjustified and that his due process rights were violated. Because Villareal made no claim of prejudice resulting from the delay between the date he first received notice of the employment infractions and the date of termination, and because his other arguments are unpersuasive, we affirm.

BACKGROUND

Villareal was employed by the Bureau of Prisons (the "Bureau") from 2007 until his termination on May 23, 2016. Prior to his termination, Villareal had no disciplinary record and all of his supervisory evaluations were rated satisfactory or higher. In December 2012, while Villareal was a Senior Corrections Officer at the Federal Detention Center Houston ("FDC Houston"), the Office of the Inspector General ("OIG") initiated an investigation focusing on Villareal's relationship with two female inmates, Claudia Solis and Andee Santana, improper contact with Solis's family, preferential treatment towards inmates, breach of computer security, and inattention to duty. In January 2013, while OIG's investigation was pending, Villareal was reassigned to a phone monitor position outside the facility's secure perimeter. In his new position, Villareal was not allowed to interact with the inmates or to work overtime.

After a seven-month investigation, OIG issued a report concluding that Villareal violated several Bureau policies. The most significant finding in the report was that Villareal placed and failed to report several calls on his cellular phone to Solis's family members. The report further concluded that Villareal had engaged in an inappropriate relationship with Solis and showed preferential treatment towards Solis and Santana by offering them

leftover cookies, allowing them to take an early shower, and allowing them to distribute toiletries. Finally, the report stated that Villareal misused his work computer, failed to properly monitor inmates around computers, failed to properly secure his office, and made derogatory remarks to inmates.

In July 2014, Villareal's supervisor, Captain Fauver, drafted a proposal letter suggesting a thirty-day suspension for Villareal. *See* App'x 93–97. This draft proposal letter, dated "July XX, 2014," was never signed nor sent. At this time, Michael Babcock was the warden of FDC Houston. In August 2014, then-Warden Babcock stated to Villareal's union representative that Villareal would be given a thirty-day suspension. Michael Pearce succeeded Babcock as warden and testified that during their transition meeting in November 2014, Babcock referred to Villareal's case as a "potential termination case." Supp. App'x 42–43.

On June 18, 2015, nearly two years after the conclusion of the OIG investigation, Captain Fauver submitted a letter proposing Villareal's removal, identifying six charges based on several specifications: inappropriate contact with an inmate, inmate's family members, and associates; preferential treatment of inmates; misuse of a government computer; unprofessional conduct; inattention to duty; and failure to exercise sound correctional judgment. Charge I, inappropriate contact with an inmate, inmate's family members, and associates, was the only charge serious enough by itself to support termination and was based on several phone calls made from Villareal's phone to inmates' family members.

When evaluating Villareal's charges, Warden Pearce conducted an informal experiment, timing how long it would take to relay sensitive information over the phone. *Id.* at 33. Based on the experiment, Warden Pearce determined that sensitive messages could be relayed in

only a few seconds, and therefore "the duration of a call doesn't necessarily mitigate the seriousness of the communication." App'x 76.

On May 23, 2016, eleven months after Captain Fauver's proposed removal letter, Warden Pearce issued a letter determining that Villareal should be terminated. The decision letter emphasized that Villareal committed an "extremely serious [offense], especially given [Villareal's] position as a law enforcement officer." App'x 47. In the decision letter, Warden Pearce recognized that Villareal's past work record had been satisfactory, but did not "shield [his] serious infraction." *Id.* Warden Pearce further wrote that Villareal's "misconduct has destroyed my confidence in [Villareal's] ability to carry out the responsibilities of [his] position," and that Villareal had "betrayed the trust placed in [him] by this Agency." *Id.* Warden Pearce noted in the letter that removal was consistent with the Bureau's table of penalties, which Villareal, as an employee, was "fully aware of," and given Villareal's lack of remorse, he had no potential for rehabilitation, and alternative sanctions would not have "sufficient corrective effect." *Id.* The letter concluded with "[y]our removal is in the interest of the efficiency of the service." *Id.*

Villareal's union, AFGE Local 1030, promptly filed a formal grievance, claiming that the discipline was untimely, there was no just and sufficient cause for the discipline imposed, the accuracy of the alleged facts were questionable, Villareal was subject to double jeopardy, and the discipline was excessively harsh and disproportionate. The union emphasized that 1,265 days, nearly three and a half years, had passed between the start of the OIG investigation and Villareal's ultimate removal. The Bureau denied the grievance, and the union invoked its right to arbitration.

Following a two-day hearing, the arbitrator found that Villareal's removal from service was justified. Based on Warden Pearce's testimony, the arbitrator decided that the phone call infractions were serious enough to support removal, and that Warden Pearce properly considered the relevant factors in reaching his decision to remove Villareal from service. The arbitrator also considered and rejected Villareal's claims of due process violations. Villareal timely filed a petition for review. We have jurisdiction under 5 U.S.C. §§ 7121(f) and 7703(b)(1).

## DISCUSSION

Under 5 U.S.C. § 7121(f), we review arbitrators' decisions in the same manner as if they were decisions by the Merit Systems Protection Board. *Johnson v. Dep't of Veterans Affairs*, 625 F.3d 1373, 1377 (Fed. Cir. 2010). We set aside Board actions, findings, or conclusions that are (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c). Additionally, under *Cornelius v. Nutt*, "[n]either the Board nor the arbitrator may sustain the agency's decision if the employee 'shows harmful error in the application of the agency's procedures in arriving at such decision.'" 472 U.S. 648, 650 (1985); *see* 5 U.S.C. § 7701(c)(2)(A). An error is harmful when it "is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error." 5 C.F.R. § 1201.4(r). The appellant or petitioner has the burden of showing that an error was harmful. *Id.*

On appeal, Villareal argues that his removal was not justified, that he was subjected to double punishment for the same infractions, and that his due process rights were violated because the deciding official changed from Warden Babcock to Warden Pearce, Warden Pearce conducted

experiments regarding the length of Villareal's phone calls to inmates' families, and 1,265 days elapsed before Villareal's removal.

The decision to remove Villareal, and the arbitrator's decision upholding it, is supported by substantial evidence. Warden Pearce's decision letter removing Villareal reveals that he considered the twelve factors an agency should weigh when determining an appropriate penalty for an employee, as required by *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305–06 (1981). *See* App'x 46–50. Before the arbitrator, Pearce testified at length regarding the *Douglas* factors and his analysis of the seriousness of the charges against Villareal. Supp. App'x 32–62. In his decision letter and before the arbitrator, Pearce maintained that Charge I, relating to the phone calls, was serious enough to alone warrant removal. *Id.* at 37. The arbitrator also weighed the *Douglas* factors and agreed with Warden Pearce's conclusions. App'x 32–33. Based on the decision letter, Pearce's testimony, and the arbitrator's decision, there is substantial evidence of Warden Pearce's and the arbitrator's consideration of the *Douglas* factors to support Villareal's removal.

Villareal's claim that he was subjected to double punishment—first, by his reassignment to the phone monitor position, where he lost overtime opportunities, and second, by his removal from the Bureau—lacks merit. Agencies often take steps, including reassignment, to solve problems created by employees. *Jinks v. Dep't of Veterans Affairs*, 106 M.S.P.R. 627, 633 (2007). Reassignment in response to an alleged offense is consistent with the Master Agreement between the Bureau and Villareal's union. Supp. App'x 15. Moreover, while a reduction in pay is punitive, reassignment without a reduction in grade or pay is not. *Jinks*, 106 M.S.P.R. at 633. Villareal does not allege that he was demoted or that his basic pay rate was reduced, only that he was denied the opportunity for overtime. Appellant's Br. 33. However, premium pay,

such as overtime, is not considered part of an employee's "pay" for purposes of disciplinary actions under 5 U.S.C. § 7511(a)(4). *Wilson v. Merit Sys. Prot. Bd.*, 807 F.2d 1577, 1581 (Fed. Cir. 1986).

Villareal's complaints of due process violations likewise do not justify reversal. Villareal first complains that the change in deciding official from Warden Babcock to Warden Pearce violated due process. Citing *Cheney v. Department of Justice*, 720 F.2d 1280, 1284–85 (Fed. Cir. 1983), Villareal asserts that it is error to replace a deciding official who has already decided on a penalty with a new deciding official who imposes harsher discipline. In support, Villareal points to the draft letter before Warden Babcock which described a thirty-day suspension as punishment for Villareal's actions, rather than termination. Substantial evidence supports the arbitrator's determination that the original deciding official, Warden Babcock, never came to a decision regarding Villareal's penalty, however. The draft letter was written sometime in July 2014, and Babcock did not retire until December 31, 2014. Indeed, Babcock continued working for several months without signing or acting on the letter by instituting the suspension. Warden Pearce, on entering the office, considered Villareal's case on his own, concluded removal was appropriate, and justified the increased penalty through his analysis of the *Douglas* factors.

Villareal further contends that Warden Pearce, by failing to disclose his use of a timing experiment to speculate as to the capacity to do harm by the phone calls, withheld an aggravating factor in the removal decision, in violation of the due process guarantee of notice. The *ex parte* introduction of new and material information to a deciding official, which the official relies on, can violate due process. *Stone v. FDIC*, 179 F.3d 1368, 1377 (Fed. Cir. 1999). Here, however, substantial evidence supports the arbitrator's finding that Warden Pearce's inquiry into the content and length of the phone calls is not "new and

material information" under *Stone*, and that Warden Pearce did not actually rely on his timing experiment to remove Villareal. *See* App'x 38–39. Before the arbitrator, Warden Pearce testified that the phone calls constituted an "extremely serious" offense regardless of their content or length, and removal was independently appropriate under his consideration of the *Douglas* factors. Supp. App'x 32–35.

Finally, Villareal contends that the length of time it took for the Bureau to decide to remove him—1,265 days—violates due process. For delay to vitiate an agency decision, the employee must show that the delay was harmful to his or her defense. *Shaw v. U.S. Postal Serv.*, 697 F.2d 1078, 1080 (Fed. Cir. 1983). The harm must "substantially impair the employee's rights," such that it likely caused the agency to reach a different decision than it would have otherwise. *Id*; *see* 5 C.F.R. § 1201.4(r).

We are concerned by the untimeliness of the Bureau's decision. The investigation was referred on December 6, 2012, and Villareal was not removed until May 23, 2016; nearly three and a half years elapsed before discipline was imposed. At oral argument, the Bureau attempted to justify the delay by breaking it down into components, citing the one month it took for the original complaint from the inmate to be referred from the Bureau's internal affairs office to OIG, and the seven months required for OIG to complete its investigation. Oral Arg. 19:23–26:05 (July 13, 2018), *available at* http://oralarguments.cafc .uscourts.gov/default.aspx?fl=2017-2275.mp3. But, while the Bureau can reasonably explain roughly eight months of time, the Bureau provides no legitimate justification for the remaining delay of over a year. The Bureau points to a lengthy internal review procedure during which the overseeing captain must decide which charges to bring, which was exacerbated by warden turnover and inter-change between the captain and the Bureau's regional and national human resources management. While

difficulties associated with personnel changes may in certain circumstances result in delay, they do not explain why it took over three years to identify charges and issue a decision in Villareal's case. The Bureau's explanation for the delay is not satisfactory, and the 1,265 day delay in removing Villareal was patently unreasonable.

Delay of this sort could vitiate an agency decision if it was prejudicial. However, no such claim of prejudice was made here. Villareal neither argued nor established prejudice before the arbitrator. Villareal's formal grievance form and invocation of arbitration only allege that the discipline imposed was untimely and that the Bureau failed to follow proper procedures. App'x 51, 60. The union's closing brief to the arbitrator claims that the Bureau's untimeliness was "reckless," unreasonable, and in violation of the parties' collective bargaining Master Agreement. *Id.* at 88. The arbitrator found that Villareal made "no such claim" of prejudice. *Id.* at 35. Villareal only raised a claim of prejudice on appeal to this court, claiming that due to the delay, he was unable to subpoena Warden Babcock because Bureau practices preclude retired officials from testifying. Appellant's Br. 20. While the extreme delay in this case may certainly have been harmful to Villareal, it is too little, too late; arguments raised for the first time on appeal are generally waived. *See, e.g.*, *Charles v. Shinseki*, 587 F.3d 1318, 1322 (Fed. Cir. 2009). Accordingly, although we condemn the delay and find the Bureau's explanation unavailing, because Villareal made no claim of prejudice below, we will not disturb the arbitrator's decision.

In light of the foregoing, the decision of the arbitrator upholding the Bureau's decision to remove Villareal from FDC Houston is affirmed.

**AFFIRMED**

Costs

No costs.