NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JOSE E. ROSARIO-FÁBREGAS,**
*Petitioner*

**v.**

**DEPARTMENT OF THE ARMY,**
*Respondent*

---

2023-2170

---

Petition for review of the Merit Systems Protection Board in No. NY-0752-18-0221-I-1.

---

Decided:  April 9, 2024

---

JOSE EVARISTO ROSARIO-FABREGAS, San Juan, PR, pro se.

BRITTNEY M. WELCH, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by BRIAN M. BOYNTON, TARA K. HOGAN, PATRICIA M. MCCARTHY.

---

Before DYK, MAYER, and TARANTO, *Circuit Judges*.

PER CURIAM.

In 2018, José Rosario-Fábregas was removed from his position as a Biologist (Project Manager) with the United States Army Corps of Engineers (Army or agency) based on charges of absence without leave (AWOL), excessive absence, and insubordination. Supplemental Appendix (SAppx)225–26. Mr. Rosario-Fábregas appealed the agency's removal decision to the Merit Systems Protection Board. SAppx232–37. The assigned administrative judge issued an initial decision, which sustained the AWOL and excessive-absence charges but not the insubordination charge, and which sustained the removal penalty. SAppx37–64. The full Board, on Mr. Rosario-Fábregas's petition and the agency's cross-petition in turn, sustained the insubordination charge and affirmed the penalty of removal on that basis, thus finding no need to reach a decision on the AWOL and excessive-absence charges. SAppx1–31, *Rosario-Fábregas v. Department of the Army*, No. NY-0752-18-0221-I-1, 2023 WL 4034398 (M.S.P.B. June 15, 2023) (*Final Order*).

On Mr. Rosario-Fábregas's appeal, we reject all but one of his challenges to the Board's decision. The exception concerns the application of a provision of the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(13). On that issue, we see deficiencies in the Board's analysis and a need for fuller consideration before a sound conclusion about the application of § 2302(b)(13) here can be reached. We therefore vacate the Board's decision insofar as it found no violation of § 2302(b)(13) and remand for further proceedings, which may include the § 2302(b)(13) issue and the AWOL and excessive-absence issues the Board did not resolve.

I

The appeal before us relates to the third removal action taken by the Army against Mr. Rosario-Fábregas. *See Final Order*, 2023 WL 4034398, at *1–3. The agency first removed Mr. Rosario-Fábregas for misconduct in February

2010, but he was restored to the Army's employment rolls in November 2011 after the Board reversed the removal on due-process grounds. *Id.* at *1; *Rosario-Fábregas v. Department of the Army*, No. NY-0752-10-0127-I-1, 2011 WL 12516590, at *1–3 (M.S.P.B. Nov. 30, 2011). Upon his reinstatement, however, Mr. Rosario-Fábregas did not actually resume work due to disagreement over whether medical professionals had properly cleared him (*i.e.*, given him a proper medical release) to resume work. *Final Order*, 2023 WL 4034398, at *1. In February 2013, the agency again removed Mr. Rosario-Fábregas based on the same charges as the first removal action. *Id.* In July 2016, however, the Board, while sustaining several of the charges, reduced the penalty of removal to a 30-day suspension. *Id.*; *see generally Rosario-Fábregas v. Department of the Army*, No. NY-0752-13-0142-I-2, 2016 WL 3574965 (M.S.P.B. July 1, 2016).

After that Board decision, the parties agreed that Mr. Rosario-Fábregas would serve the 30-day suspension and return to work on September 6, 2016. *Final Order*, 2023 WL 4034398, at *2. Nevertheless, from September 2016 through June 2017, Mr. Rosario-Fábregas repeatedly failed to submit a medical release required for his return to work, and he sought and obtained sick and annual leave. SAppx104–22; *see also* SAppx123–27. On June 22, 2017, having exhausted his balance of accrued leave, Mr. Rosario-Fábregas requested advanced leave, *i.e.*, leave to which he had not yet earned an entitlement. SAppx134–36. His supervisor, Ms. White, denied the request and warned him that if he neither reported for duty nor provided a medical release by July 5, 2017, he would be marked AWOL. SAppx133. He failed to submit a medical release or report for duty by July 5, 2017, and the Army thus placed him in AWOL status. SAppx137. On August 22, 2017, Ms. White proposed his removal based on charges of AWOL and excessive absence. SAppx146–54.

Meanwhile, on June 15, 2017, one of Mr. Rosario-Fábregas's former supervisors had sent an email to Ms. White and an agency attorney alleging that Mr. Rosario-Fábregas had been sending him harassing emails. SAppx160. In the email, the former supervisor copied the text of a "recent email" from Mr. Rosario-Fábregas and requested a "plan of action to cease this harassment[] once and for all." SAppx160. Later the same day, Ms. White responded by sending Mr. Rosario-Fábregas an email "directing that [he] cease all contact with [his former supervisor] at work" and that, if he needed to speak with the former supervisor "for any official purposes," he "send the communication through [Ms. White.]" SAppx128.

On August 24, 2017, Mr. Rosario-Fábregas sent a mass-distribution email suggesting that promotions of various agency employees, including two specifically named employees, were illegal and offering to "represent" employees "against irresponsible managers." SAppx129–30. Later that day, Ms. White sent Mr. Rosario-Fábregas an email "directing that [he] not send district wide, regulatory wide, or any other email blasts to Corps employees without [her] approval." SAppx129. On September 1, 2017, Mr. Rosario-Fábregas sent another mass-distribution email, using lists that included his former supervisor, as well another email to his former supervisor and one other individual, without sending the communication through Ms. White. SAppx131–32, 163–65. In a response the same day, Ms. White informed Mr. Rosario-Fábregas that his mass-distribution email violated her previous instruction and clarified that her orders did not limit him from exercising his rights to contact the Army Inspector General, Civilian Personnel Advisory Center, Office of Counsel, Equal Employment Opportunity office, or the deciding official in the removal proposal. SAppx131.

Based on the foregoing events, on October 11, 2017, Ms. White rescinded the pending removal proposal and issued a new one that included three charges: AWOL, excessive

absence, and insubordination. SAppx167, 168–84. The agency's insubordination charge included two specifications—the first based on Ms. White's order to cease communication with his former supervisor, the second based on Ms. White's order to cease sending mass emails without prior approval. SAppx181–82. The agency took some time to act on the new removal proposal. In May 2018, while it was still pending, the agency notified Mr. Rosario-Fábregas that the deciding official had been changed (the initial deciding official had retired) and that he could reply to the notice and could include documentary evidence in support of his reply if desired. SAppx198. Mr. Rosario-Fábregas submitted, and the new deciding official reviewed, a memorandum and several emails submitted in reply. SAppx205, 206. Finally, on August 23, 2018, the new deciding official upheld all three charges and removed Mr. Rosario-Fábregas effective the next day. SAppx225–26.

In September 2018, Mr. Rosario-Fábregas appealed the agency's removal decision to the Merit Systems Protection Board. SAppx232–37. The administrative judge's initial decision sustained the AWOL and excessive-absence charges and on that basis upheld the penalty of removal. SAppx37–64. The administrative judge did not sustain the insubordination charge, concluding that Ms. White's orders to him about his emailing activity were overbroad because they went beyond "false or offensive statements." SAppx52.

Mr. Rosario-Fábregas petitioned for review by the full Board, and the agency cross-petitioned regarding the insubordination charge. In its final order, the Board determined that the administrative judge should have sustained the insubordination charge. The Board first determined that Ms. White's orders were not improper under one provision of the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8), because they had not been motivated by prior protected disclosures. *Final Order*, 2023 WL 4034398, at *5   (distinguishing   *Smith   v   General   Services*

*Administration*, 930 F.3d 1359, 1366 n.2 (Fed. Cir. 2019), which characterized a supervisor's communication restriction as a potential violation of § 2302(b)(8)).  It then determined that Ms. White's orders were not improper under a second provision of the statute, 5 U.S.C. § 2302(b)(13), because they did not seek to prevent disclosures, were not overbroad, did not curtail Mr. Rosario-Fábregas's ability to contact other employees, and were narrowly tailored to concerns raised by his prior emails.  *Id.* The Board also determined that Mr. Rosario-Fábregas had intentionally defied Ms. White's orders.  *Id.* at *6–7.  The Board declined to rule on the AWOL and excessive-absence charges because it found the insubordination charge sufficed to support removal.  *Id.* at *7–8, *12–13.  The Board also found that Mr. Rosario-Fábregas had failed to prove any affirmative defenses, including whistleblower reprisal under 5 U.S.C § 2302(b)(8), *id.* at *8–11, and that he had not shown that his removal was the product of a harmful procedural error or due process violation, *id.* at *12.  Accordingly, the Board affirmed the penalty of removal.  *Id.* at *1, *13.

The Board issued its final order on June 15, 2023, and Mr. Rosario-Fábregas timely filed his appeal on July 17, 2023.  We have jurisdiction under 28 U.S.C. § 1295(a)(9) and 5 U.S.C. § 7703(b)(1)(A).

II

We will affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence."  5 U.S.C. § 7703(c).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *McLaughlin v. Office of Personnel Management*, 353 F.3d 1363, 1369 (Fed. Cir. 2004) (quoting *Matsushita Electric Industrial Co. v. United States*, 750 F.2d 927,

933 (Fed. Cir. 1984)). "The petitioner bears the burden of establishing error in the Board's decision." *Harris v. Department of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998).

In the present appeal, Mr. Rosario-Fábregas's arguments fall into three classes. First, he asserts that the Board made several factual and legal errors in sustaining the insubordination charge and, relatedly, rejecting his affirmative defense of whistleblower reprisal. Second, he challenges the appropriateness of the removal penalty. Third, he asserts that the Board and agency committed miscellaneous procedural errors during the proceedings. We find error in only one respect—concerning one of his challenges in the first class, addressing the propriety of the orders underlying the insubordination charge.

## A

Insubordination is "a willful and intentional refusal . . . to obey an authorized order of a superior officer which the officer is entitled to have obeyed." *Phillips v. General Services Administration*, 878 F.2d 370, 373 (Fed. Cir. 1989) (emphasis omitted). Mr. Rosario-Fábregas does not argue before this court (and did not argue before the Board, *see Final Order*, 2023 WL 4034398, at \*6) that his failure to comply with Ms. White's orders was unintentional. He does allege that the Board made several specific errors not tied to his arguments based on the whistleblower statute and two types of error that do involve the whistleblower statute. We address these in turn.

## 1

We begin by considering, and rejecting, several arguments raised by Mr. Rosario-Fábregas that are related to the insubordination charge but not focused on the whistleblower statute. First, Mr. Rosario-Fábregas challenges the authenticity of the allegedly harassing emails, stating that because his former supervisor copied-and-pasted the text

of his allegedly harassing email, "it cannot be certainly known" if he was the "legitimate author" of the emails. Pet'r Inf. Br. at 2.  But Mr. Rosario-Fábregas points to no place in his Board submissions where he denied sending the emails; instead, he had claimed that he was exercising his right to free speech.[1]  *See Final Order*, 2023 WL 4034398, at \*3, \*6.  Particularly as this allegation would require credibility determinations that have not been addressed in the first instance, we decline to consider this new argument on appeal.  *See Harris v. Securities & Exchange Commission*, 972 F.3d 1307, 1320 n.7 (Fed. Cir. 2020); *see also Bieber v. Department of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002).

Mr. Rosario-Fábregas further argues that the Board failed to consider whether his emails to his former supervisor constituted harassment under the definitions provided by 18 U.S.C. § 1514(d)(1)(B) (addressing witness harassment) and the Equal Employment Opportunity Commission website (concerning discrimination).  The insubordination charge, however, does not turn on whether the emails qualified as harassment for the cited different legal purposes.  Ms. White's orders were only required to be lawful and "authorized."  *Phillips*, 878 F.2d at 373; *see also Webster v. Department of the Army*, 911 F.2d 679, 685 (Fed. Cir. 1990) (upholding a charge of insubordination where the petitioner "violated a lawful instruction, without lawful excuse").  Mr. Rosario-Fábregas adds that the agency failed to follow procedures to investigate and document the alleged harassment outlined in a United States

---

[1]    Mr. Rosario-Fábregas in this court does not challenge, and we need not address the merits of, the Board's ruling that the orders Ms. White issued in this case were consistent with the freedom-of-speech guarantee of the First Amendment to the U.S. Constitution.  *See Final Order*, 2023 WL 4034398, at \*6 n.10.

Army Training and Doctrine Command Policy Letter. But he has not shown that the procedural requirements for those separate governmental actions apply here.

Finally, Mr. Rosario-Fábregas argues that the Board erred in failing to consider whether the agency provoked his insubordination. He argues that a "provoked insubordination doctrine" applies where an employer engages in conduct to induce an employee's insubordination to create an excuse for firing the employee. Pet'r Inf. Br. at 3; *see, e.g.*, *National Labor Relations Board v. Southwestern Bell Telephone Co.*, 694 F.2d 974, 978 (5th Cir. 1982) ("[A]n employer may not rely on employee conduct that it has unlawfully provoked as a basis for disciplining an employee."). But Mr. Rosario-Fábregas did not raise this provoked-insubordination argument before the Board, so it is forfeited. *See Harris*, 972 F.3d at 1320 n.7. Even considering this argument on the merits, moreover, Mr. Rosario-Fábregas fails to show unlawful provocation: Ms. White's orders were prompted by Mr. Rosario-Fábregas's own emails. *See* SAppx128, 129, 160.

2

We next consider Mr. Rosario-Fábregas's argument based on whistleblower reprisal under 5 U.S.C. § 2302(b)(8)—which the Board discussed chiefly in considering his affirmative defense of whistleblower reprisal, *Final Order*, 2023 WL 4034398, at *10–11. A finding of whistleblower reprisal against an employee requires that the agency took a "personnel action" "because of" a specified "disclosure" made by the employee. 5 U.S.C. § 2302(b)(8). Under 5 U.S.C. § 2302(a)(2)(A)(xi), "personnel action[s]" include "the implementation or enforcement of any nondisclosure policy, form, or agreement." Under 5 U.S.C. § 2302(b)(8)(A), as relevant to this case, what is protected is "any disclosure of information by an employee . . . which the employee . . . reasonably believes evidences (i) a violation of any law, rule, or regulation, or (ii) gross

mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." *See also* 5 U.S.C. § 2302(a)(2)(D) ("'[D]isclosure' means a formal or informal communication or transmission, but does not include a communication concerning policy decisions that lawfully exercise discretionary authority unless the employee or applicant providing the disclosure reasonably believes that the disclosure evidences—(i) any violation of any law, rule, or regulation; or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.").

Mr. Rosario-Fábregas relies on this court's decision in *Smith v. General Services Administration* to support his claim that Ms. White's instructions limiting his communications constituted a personnel action prohibited by § 2302(b)(8). 930 F.3d at 1366 & n.2. But one necessary requirement for Mr. Rosario-Fábregas to prevail on this ground here is that the supervisor's orders he complains of (as a prohibited personnel action) were a response to protected disclosures of his. And we see no reversible error in the Board's conclusion that this case, unlike *Smith*, does not involve a communication restriction motivated by an employee's prior communications that were disclosures protected under § 2302(b)(8). *Final Order*, 2023 WL 4034398, at \*5.

Before the Board and on appeal before this court, Mr. Rosario-Fábregas argued that his emails were protected disclosures because they disclosed information that he reasonably believed evidenced abuses of authority in the agency's hiring and promotion processes. *See Final Order*, 2023 WL 4034398, at \*10–11; Pet'r Inf. Br. at 5–9; Pet'r Reply Br. at 12–14. Specifically, he appears to allege that his emails disclosed (1) that the agency abused its authority by allowing high-level officials accused of misconduct to separate from the federal service with "clean records" and

(2) that the agency was discriminating against Hispanics. *See Final Order*, 2023 WL 4034398, at *11.

As to the first charge: The Board found that of the two specific high-level officials named by Mr. Rosario-Fábregas in his email, one did not separate from the service, and both in fact had formal action taken against them (a letter of reprimand and a notice of proposed removal), and that there was no basis for an objectively reasonable belief of the asserted wrongdoing. *Id.*; *see* SAppx97–99, 129; *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999) (explaining that the proper test for whether an individual holds a "reasonable belief" is whether "a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee [could] reasonably conclude that the actions of the government evidence" one of the categories of wrongdoing). Mr. Rosario-Fábregas does not show on appeal that he was unaware of (or could not have known of) these circumstances when he sent the emails at issue or that the material Board factual findings should be set aside. As to the second charge, the Board determined that Mr. Rosario-Fábregas's allegations about discrimination were not protected for two independent reasons: They were too vague, and Title VII-related claims are excluded from protection under the Whistleblower Protection Act. *Final Order*, 2023 WL 4034398, at *11. We discern no error in the Board's determination that these disclosures were also not protected. *See Langer v. Department of the Treasury*, 265 F.3d 1259, 1266 (Fed. Cir. 2001) (requiring specificity to establish a protected disclosure); *Young v. Merit Systems Protection Board*, 961 F.3d 1323, 1327–28 (Fed. Cir. 2020) (discussing discrimination claims in individual-right-of-action appeals).

We thus see no reversible error in the Board's determination that Mr. Rosario-Fábregas had not established an affirmative defense under 5 U.S.C. § 2308(b)(8).

3

Finally, we turn to Mr. Rosario-Fábregas's argument that Ms. White's orders were improperly broad. As noted by the Board, an agency charging an employee with insubordination must show that the instructions were "proper." *Final Order*, 2023 WL 4034398, at \*5 (citing *Hamilton v. U.S. Postal Service*, 71 M.S.P.R. 547, 555–56 (1996)); *see also Phillips*, 878 F.2d at 373. The Board accepted that if Ms. White's instructions were contrary to the whistleblower statute, the orders may have been improper, and so it considered whether the instructions violated either 5 U.S.C. § 2302(b)(8) or 5 U.S.C. § 2302(b)(13)—addressing the first chiefly when discussing Mr. Rosario-Fábregas's affirmative defense, and the second when discussing the agency's charge of insubordination. It determined that Ms. White's orders violated neither provision. We see no error in the Board's determination that Ms. White's orders were not contrary to § 2302(b)(8) for the same reason we have upheld the Board's rejection of the affirmative defense on this issue; on this record, any difference in burdens of proof makes no difference. We conclude, however, that the Board's analysis of whether Ms. White's orders were contrary to § 2302(b)(13) was deficient, and we thus vacate the Board's decision and remand the case for further proceedings.

Under § 2308(b)(13), it is a prohibited personnel practice to "implement or enforce any nondisclosure policy, form, or agreement" unless it contains statutorily specified language regarding whistleblower protections and does not "prohibit[] or restrict[]" disclosures to certain entities (*e.g.*, Congress and the Inspector General of the agency). 5 U.S.C. § 2308(b)(13).[2] The Board in the present matter

---

2    Section 2302(b) begins "[a]ny employee who has authority to take, direct others to take, recommend, or

approve any personnel action, shall not, with respect to such authority—," and paragraph (13) reads:

> (13) implement or enforce any nondisclosure policy, form, or agreement, if such policy, form, or agreement—
>
> (A) does not contain the following statement: "These provisions are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by existing statute or Executive order relating to (1) classified information, (2) communications to Congress, (3) the reporting to an Inspector General or the Office of Special Counsel of a violation of any law, rule, or regulation, or mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, or (4) any other whistleblower protection. The definitions, requirements, obligations, rights, sanctions, and liabilities created by controlling Executive orders and statutory provisions are incorporated into this agreement and are controlling."; or
>
> (B) prohibits or restricts an employee or applicant for employment from disclosing to Congress, the Special Counsel, the Inspector General of an agency, or any other agency component responsible for internal investigation or review any information that relates to any violation of any law, rule, or regulation, or mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, or any other whistleblower protection . . . .

5 U.S.C. § 2302(b)(13).

explicitly noted that it was "not decid[ing] here whether an instruction is a policy, form, or agreement within the meaning of 5 U.S.C. § 2302(b)(13)." *Final Order,* 2023 WL 4034398, at \*5 n.8. The Board ultimately determined that Ms. White's orders were not unlawful nondisclosure instructions covered by § 2302(b)(13) because the orders "did not seek to prevent disclosures," "did not curtail the appellant's ability to contact individuals within or outside his chain of command," and "were narrowly tailored to concerns raised by his prior emails." *Id.* at \*5. We conclude that the Board's analysis of this issue was inadequate, and we think it advisable not to resolve the issue here in the first instance, but to highlight omissions from and other difficulties with the Board's decision and to remand to the Board for a fuller analysis (if necessary).

The Board distinguished this case from *Smith* on the ground that the "the instruction at issue [in *Smith*] was a nondisclosure instruction," because "the instruction at issue [there] was motivated by the employee's prior protected disclosures," whereas Ms. White's instructions were not. *Id.* That reasoning, like the Board's reference to what the agency was "seek[ing] to" do, *id.*, rests on the premise that § 2302(b)(13) is limited to implementation or enforcement of policies, forms, or agreements that are so motivated. The Board, however, did not justify that implicit premise. Nothing in § 2302(b)(13)'s language indicates that its reach depends on the agency's motivation in adopting, implementing, or enforcing "*any* nondisclosure policy, form, or agreement." 5 U.S.C. § 2302(b)(13) (emphasis added).

It may be that the scope of § 2302(b)(13) is dependent on the statutory definition of "disclosure," 5 U.S.C. § 2302(a)(2)(D) (quoted *supra*), but that definition is not about the agency's motivation. And the Board did not discuss that definition or explain how it would bear on the scope of § 2302(b)(13), either generally or here—where Ms. White's orders are not on their face limited to "disclosure[s]" under the statutory definition. The Board also

cited no authority on the scope of § 2302(b)(13), citing only *Smith* and several paragraphs of two Board decisions, none of which address the provision.

Similarly, nothing in the statutory provision states that its restrictions do not apply if communication restrictions are justified or "narrowly tailored" to address specific concerns. *Final Order*, 2023 WL 4034398, at *5. Nor is there anything in the text of § 2302(b)(13) that would exclude Ms. White's broad orders—which restricted Mr. Rosario-Fábregas from "send[ing] district wide, regulatory wide, or *any other email blasts to Corps employees* without [her] approval," SAppx129 (emphasis added)— simply because they did not curtail Mr. Rosario-Fábregas's ability to contact certain classes or types of recipients (*e.g.*, certain officials, or individuals by individual emails). The Board also did not address the relevance, if any, of the use of government email lists. Further, the Board did not find that Ms. White's orders included the specific language required by § 2302(b)(13)(A) regarding Mr. Rosario-Fábregas's right to make protected disclosures or fell short of "prohibit[ing] or restrict[ing]" his ability to make disclosures to the statutorily specified entities. *See* 5 U.S.C. § 2302(b)(13). Although Ms. White clarified that her orders did not limit Mr. Rosario-Fábregas's ability to contact various entities and individuals (*e.g.*, the Army Inspector General, the deciding official in his removal action), her initial instructions contained no language affirming Mr. Rosario-Fábregas's continued right to make protected disclosures, and even her later clarification did not include the statutorily required language. *See* SAppx131; 5 U.S.C. § 2302(b)(13)(A).

The Board declined to answer the basic question whether Ms. White's instructions (to Mr. Rosario-Fábregas alone, not to other employees, as far as has been shown) implemented or enforced a "policy, form, or agreement" within the meaning of § 2302(b)(13). *Final Order*, 2023 WL 4034398, at *5 n.8. We do not answer that question here.

We note, however, that the language of § 2302(b)(13) ("implement or enforce any nondisclosure policy, form, or agreement") is nearly identical to that of § 2302(a)(2)(A)(xi) ("the implementation or enforcement of any nondisclosure policy, form, or agreement"), and in *Smith*, discussing the latter provision in a footnote addressed to § 2302(b)(8), we stated that "[t]he agency's order that any communication that Mr. Smith wished to transmit to managers outside of the group must be *approved by* a supervisor was a nondisclosure policy that restricted Mr. Smith's ability to make such communications." 930 F.3d at 1366 n.2. The significance of that conclusion requires consideration as part of an analysis not yet conducted by the Board of the proper interpretation of § 2302(b)(13), in light of other relevant parts of § 2302. *See also* Whistleblower Protection Enhancement Act of 2012, Pub. L. No. 112-199, §§ 102, 104(a), (b), 126 Stat. 1465, 1466–67 (adding § 2302(a)(2)(D), (a)(2)(A)(xi), (b)(13)); S. Rep. No. 111-101, at 15–16 (2011); S. Rep. No. 112-155, at 16–17 (2012).

Because we conclude that the Board did not adequately consider whether Ms. White's instructions were proper as lawful under § 2302(b)(13), we vacate the Board's decision and remand the matter. On remand, the Board might decide to rule dispositively on the AWOL and excessive-absence charges in such a way as to make the insubordination charge, and hence the resolution of the § 2302(b)(13) issue, immaterial to the outcome—a possibility we merely flag, without exploring whether that outcome (which would require fresh consideration of the appropriate penalty) could soundly be reached. But if the insubordination charge is adjudicated again, the § 2302(b)(13) issue requires fuller discussion than yet appears.

## B

We discuss Mr. Rosario-Fábregas's arguments on appeal related to whether the Board erred in sustaining the penalty of removal, despite our vacating of the Board's

upholding of the insubordination charge, because the discussion may have relevance to the proceedings on remand. First, Mr. Rosario-Fábregas argues that, in determining the appropriateness of removal as a penalty, the deciding official did not thoroughly enough consider the factors outlined in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305–06 (1981), specifically the agency's table of penalties and mitigating circumstances. The deciding official did, however, complete a checklist outlining his considerations under each *Douglas* factor. SAppx223–24. In this checklist, the deciding official expressly noted that, according to the Army Table of Penalties, the insubordination charge alone would justify removal. SAppx223. And the deciding official identified Mr. Rosario-Fábregas's documented mental and emotional distress and his 29 years of federal service as mitigating factors. SAppx223–24. Mr. Rosario-Fábregas alleges that the deciding office should have considered "[u]nusual job tensions, provocations, harassment, mental impairment, [and] bad faith [on] the part of others involved in the matters" and his service medals as mitigating circumstances. Pet'r Inf. Br. at 28; Pet'r Reply Br. at 5. But he does not point to where he raised these allegedly mitigating circumstances before the agency or the Board, and thus the failure of either to consider them does not constitute reversible error. *See Yeschick v. Department of Transportation, F.A.A.*, 801 F.2d 383, 385 (Fed. Cir. 1986); *Final Order*, 2023 WL 4034398, at *13 (showing that Mr. Rosario-Fábregas argued only about his past service and disabilities as mitigating factors before the Board).

Mr. Rosario-Fábregas also argues that the Board failed to properly consider various facts related to disparate treatment, specifically, (1) that he was treated more harshly than several supervisors and (2) that, under Army regulations, supervisors are held to higher standards than non-supervisory employees (like him). But where an employee raises an allegation of disparate penalties, "the employee must show 'that the charges and the circumstances

surrounding the charged behavior are substantially similar,' which includes 'proof that the proffered comparator was in the same work unit, with the same supervisor, and was subjected to the same standards governing discipline.'" *Miskill v. Social Security Administration*, 863 F.3d 1379, 1384 (Fed. Cir. 2017) (quoting *Lewis v. Department of Veterans Affairs*, 113 M.S.P.R. 657, 660 (2010)). As Mr. Rosario-Fábregas failed to establish that any employee faced similar charges or circumstances, the Board's failure to address these disparate treatment allegations in its decision was not erroneous.

C

Finally, Mr. Rosario-Fábregas argues that the Board and agency made several harmful procedural errors in adjudicating his case. First, he alleges that, because his former supervisor alluded to multiple harassing emails from Mr. Rosario-Fábregas but included only the "most recent email" in his complaint to Ms. White and the agency attorney, the agency must have relied on evidence not disclosed to him in considering the insubordination charge. It is undisputed, however, that Mr. Rosario-Fábregas sent multiple emails to his former supervisor, *see* SAppx159, 163, 164, and there is no evidence that the agency, in making the insubordination charge, relied on email communications other than those known to him and cited, *see* SAppx179–82.

Mr. Rosario-Fábregas also argues that it was procedurally improper for the Board to leave the charges of AWOL and excessive absence unadjudicated. The Board concluded, however, that the insubordination charge *alone* was sufficient to support the penalty of removal. *Final Order*, 2023 WL 4034398, at *12–13 (citing a declaration from the deciding official noting that any of the charges would have supported the decision to remove Mr. Rosario-Fábregas). The Board, like other tribunals, was not obligated to address every issue presented, even those which made no

difference to the outcome.  The Board remains free to consider these charges on remand.

Next, Mr. Rosario-Fábregas argues that the May 2018 change in the deciding official in his removal action denied him his procedural rights.  There is no reversible error at least where, as here, there is no indication that the initial deciding official had reached a conclusion regarding the charges or the appropriate penalty.  *See Villareal v. Bureau of Prisons*, 901 F.3d 1361, 1365 (Fed. Cir. 2018).  Mr. Rosario-Fábregas fails to demonstrate that the substitution in the deciding official prejudiced him in any specific way.  He was provided with, and took, the opportunity to submit a response to the new deciding official, and the new deciding official reviewed all evidence in the record.  *See* SAppx205, 206–07, 225–26.  Mr. Rosario-Fábregas offers no explanation of how the substitution of the deciding official caused the agency to reach a different conclusion.  *See* 5 C.F.R. §§ 1201.56(c)(1), 1201.4(r) (defining reversible "harmful error" as an "[e]rror by the agency in the application of its procedures that is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error"); *Ward v. U.S. Postal Service*, 634 F.3d 1274, 1281 (Fed. Cir. 2011) (explaining that employees bear the "burden to show harmful error in an agency's procedure in order to establish reversible procedural error").

Mr. Rosario-Fábregas argues further that the Board erred by failing to consider whether the agency complied with Army Regulation 690–700, which, he says, requires the Army to provide employees with oral admonishments and written warnings before bringing a charge of insubordination.  This argument relies on an incorrect characterization of the identified regulation, which, for certain formal adverse actions, provides a right to receive advanced written notice, an opportunity to reply, and a written decision, not a right to receive oral admonishments or written warnings.  Department of the Army, *Army Regulation 690–752,*

*Civilian Personnel: Disciplinary and Adverse Actions* 5–6 (2022).[3] Mr. Rosario-Fábregas was provided with the required procedural protections. SAppx146–54 (notice of proposed removal); SAppx168–84 (revised notice of proposed removal); SAppx48–49 (noting that Mr. Rosario-Fábregas provided responses to the notices of proposed removal); SAppx225–26 (written decision).

## III

For the reasons stated, we affirm most of the Board's determinations but vacate the Board's decision with regard to § 2302(b)(13) and remand for further proceedings consistent with this opinion.

The parties shall bear their own costs.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED**

---

[3] Since February 2022, the policy from Army Regulation 690–700 has been incorporated into Army Regulation 690–752.